Amos H. Schofield *et al.*, Plaintiffs in Error, *v.* Almeron C. Watkins *et al.*, Defendants in Error.

### ERROR TO WILL.

Two of the board of trustees of schools, where they concur in opinion, may legally perform any act which the board is authorized to do. And their acts will be held valid, until vacated by *certiorari*, or some other direct proceeding.

Where the cost of a school house to be erected, does not exceed a thousand dollars, the directors may make such levy as is necessary for that purpose.

Where such directors hold their office *de facto* or *de jure*, their acts in levying a tax will not be inquired into for irregularities by a court of equity.

Such a tax will be binding, although persons and property liable to assessment, are not included.

If the tax is attempted for the benefit of the directors acting corruptly, in fraud of law, equity will relieve.

The legislature may form school districts, or legalize irregularities in the assessment of taxes, etc.

THE complainants filed their bill in the Will County Circuit Court, alleging that the complainants were the owners of taxable property, in the school district, in the town of Plainfield, in the county of Will aforesaid, known as number seven, and hereafter more particularly described, all of whom, except one, reside in and are taxable inhabitants of the said town of Plainfield.

That divers other persons among the complainants, naming them, are the owners, and for a long time have been, of taxable property situate, lying and being in old district number one, in the said town, and are all inhabitants of the said town of Plainfield.

That long before the year 1855, and before the attempted alteration of districts number one and seven, about the 20th day of March, A. D. 1844, and in the month of April, A. D. 1848, by the orders and actions of the trustees of schools of township thirty-six, range nine, in the county of Will aforesaid, that township being the town of Plainfield, the said township was divided into seven school districts and the boundaries of each particularly defined and designated, and the said districts severally and legally organized for school purposes.

That in the division aforesaid, the said district number one, included sections fifteen, sixteen, twenty-one, twenty-two, and the north-west quarter of section fourteen and the village of Plainfield, (the old town meaning), and district number seven aforesaid, included sections number nine, ten, and south-west quarter of section three, except the north half west of Du Page river, and west half of south-east quarter of section three, and East Plainfield and Arnold's addition to Plainfield, as by the record and proceedings of said trustees, will more fully appear.

That for a long time before and at the time of the said attempted alteration of the districts number one and seven, there was a suitable and proper site and school house upon each of said districts, and schools kept and maintained in a successful and peaceful manner.

That at the time of the attempted change and alterations, as hereinafter mentioned, there was no board of trustees of said township, having the competent power and authority to make any valid or legal change of the said districts. That in the spring of 1848, O. J. Corbin, L. Hamlin, and H. B. Godard were elected trustees of said township; that afterwards, and in the spring of 1850, the said H. B. Godard left the State of Illinois and went to California, and ceased to be a resident of the said township. That from the time of the election of trustees for said township last before mentioned, there was no other election of trustees, or for a trustee, in and for said township,

until after the time of making the said supposed change and alteration.

That by the 31st section of the act of the State of Illinois, entitled "An act to establish and maintain common schools," approved February 12th, 1849, and by the 36th section of the 98th chapter of the Revised Statutes of 1845, it is *Provided*, That no person shall be eligible to the office of trustee unless he shall be a resident of the township.

That the said Godard left the State of Illinois, to be gone and reside out of said State for the period of more than two years, which was known to the said Corbin and Hamlin, the other trustees.

That by reason of the said Godard leaving the State as aforesaid, there became and was a vacancy in the said board of trustees.

That the remaining trustees did not at any time before the said attempted alteration of said districts, order any election to fill said vacancy, nor was said vacancy filled, nor were the said Hamlin or Corbin re-elected at any time between the time of their elections as aforesaid, and the said time of the attempted change of said districts number one and seven.

That the said L. Hamlin and O. J. Corbin, claiming to exercise the power and authority vested in the board of trustees, but having no power or authority to act as a board of trustees, did, on the 27th day of October, A. D. 1855, the same not being a regular session of said board of trustees, make a supposed or pretended order, as follows: "After due consideration in the premises, we the said trustees, do ordain and constitute our districts number one and seven, to be recorded and designated as district number one, with the proviso that the building contemplated to be built for the use of said school, shall be built on the south-west corner of section number ten (10,) in township number thirty-six, range nine, and east 3rd principal meridian."

That the said order was wholly void, because the trustees of schools, by law, had no power or authority to decide upon or fix the site of buildings.

That under the said order, changing the aforesaid school districts number one and seven into a district designated as number one, certain persons assumed to act as directors of said supposed district, made out of the old districts number one and seven, as aforesaid, and designated as number one,—and as such assumed directors of said new district number one, did, on or about the 29th day of June, A. D. 1858, make a pretended certificate for the purpose of levying a tax upon the owners of property in said old districts one and seven aforesaid, as follows, viz:

"We, the undersigned, directors of district number one (1),

township number 36, range number 9, in the county of Will, and State of Illinois, do hereby certify, that said board have estimated and required to be levied for the year 1858, the rate of one thousand dollars for teaching, and eight hundred and fifty-four dollars for incidental and building purposes in said district. June 29, 1858."

That the said supposed directors, even if they had been legal directors of the school district, and the said district had been legally organized, had no power or authority to make the certificate aforesaid, or to cause the said amount to be assessed upon the taxable inhabitants of said districts.

That the said board of directors did not make the estimate of rates per cent. on the ¡one hundred dollars valuation of property in said district, nor did said board make known by certificate the *rates* so required to be levied, with the list of tax payers, to the county clerk of said county, as required.

That before the time of making the said certificate to the clerk, to wit: on the 21st day of June, 1858, a meeting of the legal voters in the district, which had been regularly called, convened within the district, to vote upon the question, whether there should be any tax levied for building purposes; that the votes of the legal voters within said district, were then and there taken upon the question, and a majority of nine was cast against levying any tax for building purposes.

That there are two school sites within the said district, designated as number one; and there has not at any time since the said organization of said last mentioned district, out of numbers one and seven, before described, been any vote taken of the legal voters of said district, to purchase a new site, or change or locate one, nor to build a school house, except the vote of the 21st of June aforesaid. That the said directors have caused the said two sites in said new district, to be used for school purposes, during a considerable of the time since the said change of the districts.

That by the 48th section of the act of 1857, last mentioned, it is provided, that the directors have power to locate and build a school house, which shall cost not to exceed the sum of one thousand dollars, only in case a vote is taken on the subject of locating a site, at an election, and a majority of the votes cast at said election is not obtained for any site.

That there was no vote of the people of said supposed district taken, at any time before the making of said certificate, to the said county clerk as aforesaid, authorizing the levying of the sums or either of them, in said certificate mentioned, or for the purpose or purposes therein stated, as is required by the 44th section of the statute of 1857, before mentioned.

That on or about the 7th day of April, A. D. 1856, the said Godard· remaining out of the State, and the said vacancy not having been filled by an election, the said O. J. Corbin and L. Hamlin, as such trustees of said town, for the purpose of defining the territorial boundaries of said union district number one, made an order and pretended to ordain and establish that said union district should include sections nine, ten, sixteen, twenty-one, the west half of twenty-two, the west half and north-east quarter of section fifteen, the north-west quarter of section fourteen, the west half of eleven, all of section two except forty acres, the east half of the east half of the south-west quarter, and eighty acres of section one, being the west half of the north-west quarter of said section, also the east half of ·section three, the south-west quarter of section three except the north half west of the Du Page river.

That the directors of the said union district number one, in making the said certificate of the rates to be assessed as afore-said, and the list of the tax payers in the said district, omitted a large number of the names of tax payers in the said district, naming those omitted.

That the said list was not made and completed until after the first day of July, 1858 ; that the last column thereof was made out after said first day of July.

That in computing and assessing the taxes in the said union district, there were, and are, divers parcels of land subject to taxation, within the aforesaid boundaries of said district, but which were not included or assessed at all, giving the names of the owners of and the description of the property not assessed.

That the said school directors, or some of them, are fraudu-lently colluding with the township trustees and others, to obtain money, not for the purpose of building a school house, as is pretended, but for the purpose of having said money to use in their own business, or in that of some of them, etc.

The prayer of the bill asked that the collector be enjoined from collecting or attempting to collect the said tax or any portion thereof, and that the tax and every part thereof be held null and void.

The bill was sworn to in the usual form, and an injunction issued pursuant to the prayer of said bill.

The defendants filed a certified copy of a statute of the State of Illinois, as follows :

An Act to legalize certain proceedings of the School Trustees of Town 36, Range 9, in Will County, and of a certain School District therein.

Whereas, doubts exist whether the proceedings for the for-mation of Union School District Number One, in town thirty-six, range nine, in Will county, are strictly regular, and whereas

a considerable sum has been raised for the building of a school house in said district, for the purpose of removing all doubts as to the regularity of said proceedings,

SECTION 1. That all the acts and proceedings of the school trustees of town thirty-six, range nine, in Will county, and of the school directors of Union District Number One, in said town, in uniting districts and levying and collecting taxes for building school house, and the support of schools therein, be and the same are hereby legalized, and that all proceedings may be had in the same manner as if the said before mentioned proceedings had been strictly regular and legal.

SECTION 2. This act to take effect and be in force from and after its passage.

On the 6th day of April, 1859, the cause was submitted on the bill, and the copy of said statute, and by agreement of counsel the court entered a *pro forma* decree that the said statute is a sufficient bar to the relief prayed for in said bill—that the said bill of complaint be dismissed, and the injunction issued be dissolved, and that upon the complainants entering into a bond to the township trustees, conditioned for the payment by the complainants of all taxes assessed against them in said school district, in case the Supreme Court shall affirm the decree of this court, then the said injunction, so far as the collection of the said taxes against the said complainants is concerned, shall be continued as a temporary injunction during the pendency of this cause in the Supreme Court.

The plaintiffs assign for errors, the following:

1st. The court erred in deciding that the said statute, filed in said cause, was a bar to the relief asked by complainants, in their bill.

2nd. The court erred in deciding to dissolve the injunction granted in this cause.

3rd. The court erred in dismissing the complainants' bill.

The court rendered a decree in favor of the defendants to said bill, whereas by the law of the land, the decree should have been rendered in favor of the complainants.

SCATES, McALLISTER & JEWETT, for Plaintiffs in Error.

LELAND & LELAND, for Defendants in Error.

WALKER, J. It is urged as an objection to the power to levy a tax in this district, that at the time it was formed, one of the trustees was absent in California, and that but two acted in its formation. The law constitutes two members of the body a quorum to transact business. And when they concur in any act,

which the board may legally perform, no reason is perceived why the act is not as legally binding as if all were present. When the legislature designated that number as a quorum for the transaction of business, it conferred upon them full power to perform all the duties devolving upon the board. Even if their act was in this respect illegal, it purported to be regular and must be held binding until vacated by *certiorari* or some other direct proceeding. They can act as officers *de facto*, and within the scope of their authority, and for all that appears in the record this proceeding was perfectly regular in forming this district.

It is also insisted that the directors had no power to levy a tax for the purpose of erecting a school house, unless the inhabitants voted in favor of such tax. In the cases of *Munson* v. *Minor* and *Merritt* v. *Farris, post,* it is held that where the building proposed to be erected does not exceed the cost of one thousand dollars, the forty-eighth section of the act establishing a system of free schools, confers the power upon the directors to make such a levy, and a vote of the district is unnecessary. In this case the bill fails to allege that, it is for the erection of a school house to cost over that sum, and the amount levied being less than one thousand dollars they were authorized to make such a levy. Nor could a vote resulting in a majority against such a levy divest them of the power. They derive the power from the law and not from a vote of the citizens. If the power delegated to the directors is liable to abuse in its exercise, the correction is in the hands of the legislature, and not in the courts. The tax was levied by persons exercising and performing the duties of directors of this district, and these incorporations have the power to impose these taxes, and whether they held their office *de jure* or *de facto*, their acts in levying a tax will not be inquired into by a court of equity for mere irregularities.

It was likewise insisted that, the tax was void because persons and property liable to assessment were omitted from the assessment list. This question was also presented in the case of *Merritt* v. *Farris,* and held not to invalidate the assessment or tax. If such omission was intentional, or occurred from gross negligence on the part of the officer whose duty it was to make the assessment, or return the list, it would doubtless render them liable to an action for the damage sustained by tax payers who had thus sustained injury.

It is alleged in the bill that this tax was levied by these directors for their own individual use, and not for the purpose of erecting a school house. And it was urged that the court erred in rendering the decree dissolving the injunction, and dismissing the bill. The certificate returned by them to the clerk

states that a portion of the levy was for teaching, and an other portion was for incidental and building purposes, in the district. If this was not true, but was only using the forms of law, and an exercise of powers conferred by law for unauthorized purposes, and in fraud of the law, there can be no doubt that parties oppressed by such acts, have a right to relief from them. If the allegation in the bill is true, and it is sworn to, and remains undenied, it is a degree of corruption that is believed to be unusual, and the first that has occurred under the exercise of this power. And it would be such a fraud upon the rights of the citizens of the district, and upon the law as would invest a court of equity with jurisdiction to prevent its perpetration. Courts of equity may take jurisdiction to prevent, as well as relieve against a fraud. The fact that the parties injured have a remedy at law to recover damages they may sustain by such a fraudulent abuse of power, or that directors thus acting might be indicted and punished for such corruption in office, does not divest a court of equity of its jurisdiction in case of fraud. Fraud vitiates and avoids all acts, and no reason is perceived why, if the exercise of a legal power to levy a tax is employed for corrupt and fraudulent purposes, that it should not be within the same rule, or why a court of equity should not exercise its jurisdiction. If the tax was levied by the proper officers, and for an authorized purpose, it would be otherwise.

It was however insisted that this tax was legalized by the act of the legislature adopted the 19th Feb. 1859. That act provides that all the acts of the trustees of schools in this township, and of the directors in this district, in uniting the districts out of which this one was composed, and the levying and collecting taxes for building school house and support of schools, are legalized, and that all proceedings may be had in the same manner as if the proceedings had been strictly regular and legal. This act took effect upon its passage, and there can be no doubt that the legislature have the power to form a school district, or may legalize the acts of officers in attempting to form a district, so as to render such district legal, and there can be as little doubt, that such was the operation of this enactment. If any irregularity had occurred in its formation by the trustees, which would have been grounds for reversing their order establishing it, those irregularities were cured by this enactment. And the power to cure irregularities in the manner of levying a tax, is equally undoubted, and so far as this tax was levied for the purposes specified in the act, there is no doubt that the levy is thereby made valid. But the act only professes to legalize a tax to build a school house and to support schools in the district. It does not legalize a tax levied for the private benefit of the

directors, and the bill alleges that such was the object of the levy of the tax. This act cannot bear the construction that it was intended to legalize this tax for such a purpose.

The decree was erroneous, and must be reversed, and the cause remanded, with leave to the defendants to answer the bill.

*Decree reversed.*