The Board of Supervisors of DuPage County

*v.*

Charles Jenks *et al.*

1. Taxes—*right to enjoin collection, on behalf of others.* As each individual tax is a separate and distinct burthen, wholly disconnected from that of other persons, it follows that each individual has the legal right to contest the validity of the tax imposed upon him, but no tax-payer has the right to enjoin the collection of similar taxes imposed upon other persons for whom he is not agent, trustee, or acting in some other fiduciary relation.

2. In order to avoid multiplicity of suits, many persons may join in exhibiting a bill to enjoin the collection of a tax upon their property, by becoming plaintiffs and parties to the record; but it can not be held that a litigiously disposed person may, on his own motion, file a bill in his own name, and on behalf of all other tax-payers of his county or township, and thus stop the collection of all the revenue within the locality.

3. SAME—*constitutional limitation on the power of the legislature.* Sec. 2 of Art. 9 of the constitution of 1848, which declares that the general assembly shall provide for levying a tax by valuation, to be ascertained by some person or persons to be elected or appointed in such manner as the general assembly shall direct, and not otherwise, is not a delegation of power to the general assembly, but a limitation on its power. It restricts the power and means of ascertaining the value of taxable property by requiring such value to be determined by persons elected or appointed under a law for that purpose.

4. SAME—*legality of appointment of assessors under special law.* Where, during a contest of an election for the removal of a county seat, the legislature passed a special act requiring the business of the county to be transacted at the place certified by the proper officers as having been determined the county seat, and requiring the board of supervisors to be convened at such place, and if all the assessor's books should not have been then returned, directing the board of supervisors to cause new assessments to be made, and for that purpose conferred power to appoint suitable persons to assess the property in any town whose books had not been returned: *Held,* there was no constitutional objection to this law, and that under it ample power was conferred on the board of supervisors to appoint one or more assessors for any town whose assessment book had not been returned to the county clerk within the time required.

5. SAME—*constitutional power of the legislature to change the mode of assessing property by dispensing with previous requirements.* And in such a case, while new assessments were being made by newly appointed assessors, a special act was passed providing that these assessments, when made and returned to the board of supervisors, should be deemed and held to be valid in all respects, provided they were made in conformity with the constitution: *Held,* that such act was not in violation of any constitutional provision, its only effect being to make the assessments valid, notwithstanding some of the pre-existing statutory requirements had not been observed.

6. Where the constituted authorities, for any cause, refuse or neglect to assess and collect the revenue of the government, the legislature is not powerless to provide for the appointment of other officers and instrumentalities that will. Such a power is essential to the very existence of the State government.

7. SAME—*right to appoint more than one assessor for a town, and to appoint non-resident of town.* Where the assessors of certain towns refused

to make and return assessments of their towns, and the legislature, by a special act, authorized the board of supervisors of the county to appoint persons to discharge this duty, and it appeared that no persons in such towns would act, and thereupon the board of supervisors appointed several assessors to make the assessment for each of such towns, who were not residents thereof: *Held*, on bill to enjoin the collection of the taxes levied on such assessment, that the board, being authorized to appoint "persons" to make the assessments, were not restricted to the appointment of one person only for each town, but might appoint as many as the exigencies of the case required; and even were that not so, yet as such persons were officers *de facto*, that the court could not inquire into the regularity of their appointment except in a direct proceeding for that purpose.

8. SAME—*assessor calling assistants to his aid.* Where a bill to enjoin the collection of the taxes levied in a township, amongst other causes for the relief, alleged that the assessor called others to assist him in assessing the property of the town, but failed to show what part of the property was assessed by such assistants: *Held*, that even if this was irregular, it would not affect the assessment made by the proper officer, and the bill failing to point out what property was assessed by the assistant, was clearly defective, and that if the books were returned by the assessor in his name, a court of equity would not go behind the book to look for irregularities.

9. SAME—*for what equity will enjoin their collection.* A court of equity will, with reluctance, stay the collection of a tax. It will not interfere by injunction to prevent such collection because of irregularities in the assessment. The exceptions to this rule are confined almost exclusively to cases where the tax itself is unauthorized by any law, or if authorized, only when it is assessed upon property exempt from the tax, and to cases where the assessment is fraudulently made. When the law authorizes the tax, the court will not inquire whether the persons imposing it are officers *de jure* or *de facto*.

10. SAME—*irregularities for which equity affords no relief.* The following irregularities held to afford no ground for a court of equity to enjoin the collection of a tax, viz: the fact that the assessor failed to call on persons for lists of their taxable property; the fact that the real estate was not assessed in the names of the owners; the fact the assessor was not a resident of the town, or was irregularly appointed, and the fact that he did not go upon the town lots and call upon the owners to list the same, and assessed the same without reference to improvements, and in a partial manner, when no injury is shown to have resulted thereby to the complainants.

11. SAME—*county and local taxes not levied upon—value as equalized by the State board.* The State board of equalization equalize only with reference

to the State taxes, and not with the least reference to county and local taxation. The clerk is bound to extend the State taxes upon that assessment, but all other taxes are to be extended upon the assessment of the assessors as equalized by the county board.

12. CONSTITUTIONAL LAW—*act relating to county seat.* Where a vote was taken on the question of the removal of a county seat, which resulted in a majority of votes in favor of the proposed change, as appeared by the certificate of the proper officers, but the result was contested by a bill in chancery, upon which a preliminary injunction was granted restraining the county officers from removing their offices and records to the place selected, and the legislature, during the pendency of this contest and the injunction, passed an act requiring the county officers to transact the county affairs at the latter place: *Held,* that the act was not unconstitutional as determining a judicial question, but that it only required the officers to do what was their duty, independently of such act,—the certificate of the result affording *prima facie* evidence, until the question was judicially decided otherwise.

13. IMPLIED POWER *from express power.* As a general rule, where power is granted, it implies that any reasonable and proper means may be employed to execute it, unless specific directions are designated.

APPEAL from the Circuit Court of DuPage county; the Hon. SILVANUS WILCOX, Judge, presiding.

Mr. H. G. MILLER, and Messrs. VAN ARMAN & VALLETTE, for the appellant.

Mr. CHARLES WHEATON, and Mr. W. H. CODY, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

There were instituted two suits in chancery, in the Du Page circuit court, one by Charles Jenkins and a number of the citizens of the town of Naperville, and the other by Edmund E. Page and a number of citizens of the town of Lisle, both townships in the county of Du Page, for the purpose of restraining the collection of all taxes levied in those towns for the year 1868.

The bills were against the collectors, and the board of supervisors of the county were admitted to defend. The bills

both proceed upon the ground that the tax is unconstitutional and void.

The court below, on the hearing, granted the relief and decreed a perpetual injunction against the collection of the taxes thus levied. These bills both are substantially the same, having been so argued, and will be considered as one case.

The bill alleges that the act of March 10, 1869, and the act of the 17th of April of the same session, are repugnant to the constitution of 1848, and the assessors who were appointed by the board of supervisors of the county to assess the property of these towns, did not take the oath of office; that neither of them was a resident of the town, and were strongly prejudiced against the citizens of the towns, and that the assessments were made in an unlawful, improper, partial and grossly unjust manner; that the assessors did not call upon persons in the towns to list their property, as required by law; that they did not assess the real estate in the names of the owners, so as to designate each owner, but adopted descriptions of the same from the government surveys, nor are their improvements assessed on the sub-divisions of the owners; that the assessors did not go upon the town lots, or call upon the owners in the village for the assessment of their lots; that after the completion of the assessment, the assessors did not give notice of the time and place when and where they would meet with the board of review to hear objections to assessments; that some of the assessors were not appointed by the board of supervisors, but by those who were thus appointed; that the assessors did not report to the board of supervisors who appointed them, but to a new board; that the clerk extended the tax for county purposes on the equalized valuation made by the board of supervisors, and not on that made by the State board, and jurisdiction is claimed upon the ground that the collector is not pecuniarily able to respond in actions at law to have the tax refunded to the tax-payers.

It seems that the assessors of these towns failed to return the assessor's book for the year 1868. This action on the part

of these officers seems to have been connected with or have grown out of the contest then in progress as to whether Naperville or Wheaton was the county seat.

The legislature adopted a law, which was approved on the 10th of March, 1869, providing that the public business of the county should be transacted at the town of Wheaton until the question as to which place was the county seat should be determined, and that the county clerk should at once convene the board of supervisors of the county, and if all the assessor's books should have been returned to the clerk, the board was required to proceed to perform their duty in levying the county tax; but if the books were not all in the hands of the clerk, the board was required to cause new assessments to be made; and the act conferred power to appoint suitable persons to assess the property of any town having failed to return the assessment books. The act provided for the time and manner of obtaining judgment on the delinquent tax list.

On the 18th day of March, 1869, the board of supervisors met, and, on the next day, appointed assessors for the various towns from which books had not been returned, and in three of them the persons appointed proceeded to make the assessment, but in the towns of Naperville and Lisle the persons appointed refused to act; other residents were appointed, but also refused to act, and after being assured by the supervisors of these towns that residents could not be found to act, the board then selected persons from other portions of the county. The persons thus selected proceeded and made the assessments.

The assessors gave notice that they would meet at the court house at Wheaton on the 10th day of May, 1869, to review the assessments, when all persons might attend and would be heard. At the time and place mentioned they met, and many persons attended from the towns, and were heard, and mistakes, so far as detected, were corrected. The books were then returned to the county clerk, the taxes were levied and

extended on the collector's warrant, as in other cases, and the books were delivered to the town collectors.

The general assembly, on the 17th day of April, whilst these assessments were being made, passed an act which provided that these assessments, when made and returned to the board of supervisors, should be deemed and held to be valid in all respects, provided they were made in conformity with the constitution.

We are aware of no adjudged case in which it has been held that one tax-payer may enjoin the collection of a tax imposed upon another person for whom he is not agent, trustee, or acting in some other fiduciary relation. To permit such a practice would be to encourage officious intermeddling in the affairs of others.

It may be, and is, no doubt, true that many of the ctiizens of these towns felt themselves under at least a moral obligation to lend the necessary support to the State, county, town and municipal governments under which they lived and by which they were protected in their persons and property, and were willing to waive any irregularities that may have intervened in levying these taxes. They, no doubt, felt the duty they owed to support the State and county governments by paying these taxes. They seem to have had no disposition to engage in a cause that would tend to embarrass the State, and to disorganize the county, and stop the administration of justice, even if the tax was not technically correct in the mode in which it was levied.

In such a case, what right have other persons not appointed to act for them, who have not been requested or even desired to interpose, to elect themselves their agents to prevent them from discharging not only a moral but a public duty—the duty of paying a fair share of the taxes necessary to support their government. Each individual has, no doubt, the legal right, where a tax has been imposed upon him that he conceives to be illegal, to contest its validity, but we are at a loss to comprehend how he thereby acquires the right to determine that

his neighbor shall not pay a tax similarly imposed upon him. Each individual tax is a separate and distinct burthen, and stands wholly disconnected from that of other persons. Complete justice may be done in each several case, and the matter there adjudicated can not be called in question by others; nor can any claim be interposed in regard to the tax then litigated by other persons not parties to the suit. Hence there can be no necessity to make others parties.

It is true that, to avoid a multiplicity of suits, many persons, determined to contest the validity of a tax, may, if they choose, join in exhibiting a bill by becoming plaintiffs and parties to the record, but it can not be held that a litigiously disposed person may, on his own motion, file a bill in his own name and on behalf of all other tax-payers of the county, and stop the collection of all the revenue for the support of the State, the county, townships, cities, towns, schools and other municipalities. Our government is not and never can be at the mercy of one or a few individuals, thus to bring it to an end by the forms of law. To so hold would be a perversion of the purposes for which a court of chancery was created, and would be a power never conferred, destructive to the peace and good order of society, if not to the government itself. Such a power can never be exercised by any court. It would be revolutionary and highly dangerous to all our institutions. It was, then, manifest error to enjoin the entire tax of these towns, even if the levy was all that is urged against it.

Nor can we perceive wherein the acts of the legislature, which are impugned, are unconstitutional.

The constitution of 1848, Art. IX, sec. 2, declares that the general assembly shall provide for levying a tax by valuation, that every person shall pay a tax in proportion to the value of his or her property, such value to be ascertained by some person or persons to be elected or appointed in such manner as the general assembly shall direct, and not otherwise.

This was not a delegation of power to the general assembly, but a limitation on their power. Had this provision not been adopted, the general assembly could have imposed a tax in any mode it might choose, or, having required the tax to be levied by valuation, they could have adopted any means to ascertain the value they might regard expedient and proper.

That clause, however, has restricted the ascertainment of the value of taxable property to persons who shall be elected or appointed under an act of the general assembly. It fully recognizes, it even specifies, the power to appoint such persons; and the general assembly, by the act of the 10th of March, undeniably conferred ample power upon the board of supervisors to appoint these assessors, and they were appointed strictly in conformity with the provisions of that act. In this we entirely fail to see how or in what the general assembly has transcended its power.

Nor can we say that the act of the 17th of April infringes the organic law. There is no constitutional provision which has prescribed the details that shall be observed in making assessments for taxation. These were left to the general assembly that they might alter, change or repeal them as fairness, justice or expediency might require; and all this act professes to do is to make these assessments valid, notwithstanding some of the statutory requirements may not have been observed.

That such a law might be passed applying to all assessments we presume will not be questioned, and to hold that it is prohibited when but one county is concerned, would be to hold that all of the immense number of local and special laws adopted by the general assembly since the constitution of 1848 went into operation, are void, and that no rights have been acquired under them. It would be to hold, under that instrument, the legislature was powerless to adopt any but general laws.

It can not be that where, from any cause, the constituted authorities refuse or neglect to assess and collect the revenue

of the government, that it is powerless to provide other officers and instrumentalities that will, and thus preserve itself from destruction.

The framers of our constitution could never have supposed they were depriving the legislative branch of the government of a power so essential to the very existence of the government.

No one can imagine that, because the officers, whom the people elect, refuse to impose taxes upon, or collect them from their constituents, they can thereby successfully obstruct the government in obtaining the revenue, without which it can not long survive; or that they can thus free the people from the just burthens of government. A government so powerless could not long survive, nor could it afford needful protection to its people. All governments entitled to the name must be invested with much more ample means for their preservation.

These laws are clearly constitutional in the requirements for the appointment of assessors and the imposition of the taxes authorized by law.

It is, however, urged that the general assembly had no constitutional power to require the public business of the county to be performed at the town of Wheaton, as the contest as to the vote on that question was pending and undetermined.

It is enough to say that an election had been held, and the certificate had been given in favor of Wheaton. Under this certificate, without anything further, had no injunction to prevent been obtained, it was the plain and manifest duty of the county officers to have removed their books, papers and archives to Wheaton.

The certificate of the result of the election made Wheaton *prima facie* the county seat, and all public business transacted there would be valid and binding until it should be declared by competent authority not the county seat, and this, too, although it might be done in violation of an injunction. This being so, the legislature declaring that all public business

should be transacted there conferred no new power, decided nothing, but only recognized the law as it existed before the enactment. It changed the rights and duties of no one, unless it was to authorize the officers to transact business there, notwithstanding the injunction.

It is urged that the board of supervisors had no power to appoint more than one person in each town to make the assessment under the act of the 10th of March, and for that reason the board of supervisors exceeded their power, and the assessment is void.

The act authorizes the board to appoint persons for the purpose, without restricting the number for each town, and it is not a forced construction to hold that the board might appoint as many as the exigencies of the case required.

As a general rule, when power is granted, it implies that any reasonable and proper means may be employed to execute it, unless specific directions are designated. They were authorized to appoint persons for the purpose, and the number was not limited.

But even if the board had exceeded their power, the persons appointed were officers *de facto*, acting under color of office, and we would not, in this collateral proceeding, inquire into the regularity of their appointment, or try a contested election to determine whether an assessor was duly elected. That belongs to a direct proceeding.

It is urged that, in making these assessments, the persons appointed called others to their assistance, and that this was irregular. Suppose it was, that could not affect any assessment not made by those thus assisting the assessors. It could not, in the remotest degree, affect the assessment made by those who were appointed by the board of supervisors. As well might it be contended that an irregular or illegal assessment of the property of an individual in a county would render the entire assessment of the county void, and we can not conceive that any one could be found to insist on such a proposition.

As we understand the evidence, the books were returned by and in the name of the assessors, and not their assistants. This being so, a court of equity will not go behind the books to inquire whether the officer performed all the duties strictly according to law. It will not seize upon mere irregularities to enjoin the collection of the revenue, and thus embarrass the administration of the government.

The bill does not specify what portion of the property was assessed by the assistants, and even if irregular, there would be no means of separating such assessments from those made by those who were appointed.

It is with reluctance that chancery stays the collection of the public revenue. It is a branch of equity jurisprudence of very modern introduction, and of doubtful expediency. It may well be doubted whether it would not have been better for the public welfare had the parties been left to seek their remedies at law in all cases, as they were, until recently, required to do. But this court has held that, in a class of cases involving the collection of a tax, a court of chancery might interpose its power to prevent its collection.

It has been held that the courts will not interfere by injunction to prevent the collection of taxes because there have been irregularities in the assessment; and the exceptions to this rule are confined almost exclusively to cases where the tax itself is unauthorized to be imposed by any law, or if authorized, only when it is assessed on property exempt from the tax. And it has also been held that, where the law authorizes the imposition of a tax, the court will not inquire whether the persons imposing it are officers *de jure* or *de facto*; so the officers are acting in and discharging the duties of the office is all the court will require; and it has also been held that the omission to tax property not exempt will not invalidate other taxes levied on property subject to the burthen. *Chicago, B. & Q. R. R.* v. *Frary*, 22 Ill. 34; *Munson* v. *Minor*, 22 Ill. 595; *Metz* v. *Anderson*, 23 Ill. 463; *Schofield* v. *Watkins*, 22 Ill. 66; *Merritt* v. *Farris*, 22 Ill. 303; *Ryan* v. *Anderson*, 25 Ill. 372.

And in the case of *County of Cook* v. *Chicago, B. & Q. R. R.* 35 Ill. 460, it was said that, even in such cases there must be special reasons for the interposition of the court to restrain its collection.

In other cases it has been held that the court would afford relief where the assessment was fraudulently made, or persons have assumed the power to impose the tax on property when the law had conferred no such power, or where the property was exempt. *Drake* v. *Phillips*, 40 Ill. 388; *Vieley* v. *Thompson*, 44 Ill. 9; *Board of Supervisors* v. *Campbell*, 42 Ill. 490; *Cleghorn* v. *Postlewaite*, 43 Ill. 428; *Darling* v. *Gunn*, 50 Ill. 424. These cases lay down the rules by which courts of equity will act in restraining the collection of taxes, and we have no inclination to enlarge the rule.

As to the objection that the assessors did not call on persons for a list of their taxable property,—that was an omission of duty on the part of the assessors, but is only an irregularity, and affords no ground for restraining the collection of the tax.

It was not a fraud, or if so, not such as authorizes an injunction, and if injury has resulted, the party has his remedy at law. But even if it could be held to be a ground for equitable relief, it is not alleged in the bill which individuals were not so called upon. Nor does the objection that the real estate was not assessed in the name of the owner, afford the slightest ground for equity to restrain the collection of the tax. Each owner could find his land on the list, and pay his tax with the same effect as if listed in his own name. Although the government surveys were followed in making assessments, each owner could pay on his own land by a proper description, and that would discharge it from the burthen. This affords no ground for enjoining the tax.

The objection that the assessor did not go upon the town lots, and that the owners were not called on to list the same, and that they were assessed in a partial and unjust manner, without reference to improvements, or the difference in value

of other lots on account of improvements, may or may not have been irregularities. If there was any injury done to complainants by such an assessment, it does not appear from the allegations of the bill. It does not state that the irregularity, unfairness, partiality or injustice operated in the least degree to the injury of complainants. It may have been an irregularity, but if so, it is no ground for enjoining the tax.

If the parties have sustained injury, they must seek their remedy at law; and the failure to give notice that the assessors would meet the town clerk and supervisor to review the assessment rolls, falls within the same rule; and that the assessors did not report to the board of supervisors who appointed them, is without force.

It was also objected that the clerk extended the tax on the assessment rolls made by the town assessors, and not on the equalized valuation fixed by the State board. In this we can not see the slightest objection. The State board only equalizes in reference to State taxes, and not with the least reference to local taxation.

The clerk is bound to extend the State tax on that assessment. It is believed to be the uniform practice throughout the State for county clerks to extend the tax for county and other local taxes on the original assessment, as equalized by the board of supervisors, and the State tax on the equalized value fixed by the State board. Any other practice would lead to confusion and embarrassment.

The board of supervisors are required by law to levy the county tax at their annual meeting in September, and town, school and other local taxes are required to be levied and returned to the county clerk by or before that time; and these levies can only be made on the valuation returned by the assessors, as there is no other means of ascertaining the rate per cent, and if the valuation is reduced by the State board, there would be a deficiency in the required amount, or if it should be raised, there would be an excess over and above the amount

required and intended to be levied, if these taxes were extended on the equalized value fixed by the State board.

The construction given the law by the county clerks leaves the operation of the law free from objection or inconvenience, and is believed to be correct.

We fail to find that the bill alleges, or that the proof shows that complainants, by these assessments, were required to bear an undue proportion of the burthen of administering the affairs of the county.

It is not, so far as we have been able to see, alleged or shown that the valuation of property in these towns is higher than in other portions of the county. And if they only have imposed on them their fair share of that burthen, then they have no just right to complain.

There is no pretense that the State tax is not warranted by law. It is authorized to be levied, and required to be collected. Nor can it be successfully denied that the law authorizes and requires a county tax to be imposed and collected. And in doing so, in this case, the board of supervisors have not exceeded the per cent the law has empowered them to levy, and a court of equity will not restrain its collection because it is claimed that it may be misapplied, or even that the county authorities intend to misapply a portion of the fund, when collected. If, after it is paid into the treasury, such an effort shall be made, then, and not till then, will a court of equity interpose to prevent the wrong.

To stay the collection of all taxes until a court of equity could, after the delays incident to proceedings in that forum, ascertain whether a portion of the fund was designed to be misapplied by school directors in one of the districts in the county, or the town board of auditors, or some other municipality, would be highly prejudicial to the public interest. The taxes were authorized by the statute; were levied for State, county and local purposes. They were levied by officers whom the law had vested with the power to make the levy, and the assessments were made by persons acting as

19—65th Ill.

officers under color of office.   The laws under which they acted, and the assessments and levy were made, were constitutional, and the acts of the officers under the laws were constitutional, and although there may have been some irregularities in making the assessments, still they form no ground for enjoining the collection of these taxes.

We can see no merit in the application, or grounds for enjoining the tax, and hence the relief sought should have been denied.

The decrees of the court below must be reversed and the bills dismissed.

*Decrees reversed.*