DAVID WIGGINS

*v.*

THE CITY OF CHICAGO.

1. JUSTICE OF THE PEACE—*appearance before cures irregularity as to manner case comes before the court.* Where a suit for the violation of an ordinance, brought before one justice of the peace, is tried before another, and the defendant appears and goes to trial, it will not matter how the case came before the latter justice, as appearance gave jurisdiction of the defendant's person.

2. CRIMINAL COURT OF COOK COUNTY—*what embraced in term "quasi criminal nature."* The criminal court of Cook county, under the present constitution, has jurisdiction in cases of a *quasi* criminal nature. These terms, as used, are intended to embrace all offenses not crimes or misdemeanors, but in the nature of crimes, and which are punished, not by

indictment, but by forfeitures and penalties. It includes all *qui tam* actions, prosecutions for bastardy, informations in the nature of a *quo warranto*, and suits for the violation of ordinances.

3. VERDICT OR FINDING—*form not material on appeal.* On the trial of an appeal in a prosecution for violation of an ordinance, the court, trying the case without a jury, announced that he found the defendant guilty, instead of finding the issues for the plaintiff: *Held*, that the finding was sufficient, the substance being regarded in such cases and not the form.

4. The books do not give any precise form for a verdict, the rules re·quiring that it be responsive to the issues. It may be pronounced in open court and then entered by the clerk in form, and should then be .read to the jury to avoid all mistake.

5. JUDGMENT—*suit for breach of ordinance.* On the trial of a prosecution for breach of an ordinance, on appeal, the court, after finding the defendant guilty, in rendering judgment ordered that "the defendant be fined the sum of $50, and pay the costs," and awarded execution: *Held*, that while the judgment was informal and unskillfully drawn, it was sufficient and could be collected. ·

6. ORDINANCE—*power to provide for revoking license.* The power to tax, license and regulate auctioneers, etc., authorizes the city authorities to adopt any reasonable ordinance for the purpose, and the city may tax, may license, and may regulate the business, and the ordinance may properly empower the mayor to revoke the license for cause.

7. SAME—*must be reasonable.* All ordinances of a city must be reasonable, and under the power to tax, license and regulate a business the city may not directly prohibit the business or adopt such unreasonable regulations as will produce such a result, or even be oppressive and highly injurious to the business.

8. SAME—*auctioneers.* An ordinance of the city of Chicago requiring auctioneers to pay a license of $200 per annum, and requiring bond, with two sureties, in the penal sum of $1000, to be approved by the mayor, and conditioned for ·the due observance of the ordinance relating to the business, and requiring licenses to expire on the last day of April next after their date, and providing for a forfeiture for violation of the ordinance, and giving the mayor power to revoke the same, when satisfied of the fact: *Held*, not to be unreasonable in its requirements, and valid.

9. LICENSE—*revocation not judicial act.* When a party accepts a license from the mayor of a city, under an ordinance empowering the mayor to revoke for cause, and the license recites that it may be revoked by the mayor at any time, in his discretion, he will have no ground to say that the mayor has no power, and that it can only be revoked by a judicial sentence.

10. CONSTITUTIONAL LAW. Sec. 1, art. 9, of the constitution, which declares that the General Assembly shall have power to tax peddlers, auc-

tioneers, brokers, etc., does not operate as a prohibition on all other bodies to tax such persons, and for any other purpose than for State revenue, but the legislature may authorize municipal bodies to tax such persons.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

This was a suit, brought by the city of Chicago against David Wiggins, to recover the penalty for violating the provisions of an ordinance relating to auctioneers in the city. The ordinance required that all sales of goods, chattels, or personal property at public auction, except when made under legal process, should be made by an auctioneer, his co-partner or clerk, who should first have obtained a license, under the hand of the mayor and seal of the city, and have paid to the city collector at the rate of $200 per annum, and have executed a bond, with two sureties, to the city, to be approved by the mayor, in the penal sum of $1000, conditioned for the due observance of the ordinances and regulations of the common council.

That all licenses should be made to expire on the last day of April next after the date thereof, and be subject to revocation by the mayor, whenever it should appear, to his satisfaction, that the party so licensed had violated any provision of any ordinance of the city relating to auctions or auction sales, or any condition of his bond.

The third section provided a penalty of $50 for selling or attempting to sell at public auction, etc., without having a license.

Messrs. KNOWLTON & HUMPHREVILLE, for the plaintiff in error.

Mr. I. N. STILES, and Mr. JOHN LEWIS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The first question presented is, whether the criminal court of Cook county had jurisdiction over the subject matter of the

appeal prosecuted from the justice of the peace. It is a matter of no consequence how the case was transferred from the police magistrate Scully to the police magistrate Banyon, as appellant appeared before the latter, and went to trial, and appealed the case to the criminal court. The magistrate having jurisdiction of the subject matter of the suit, there can not be the slightest question that he also acquired jurisdiction of the person of appellant. when he entered his appearance to the suit. *Roberts* v. *Formhalls,* 46 Ill. 66, and the cases there cited.

The criminal court, however, is limited in its jurisdiction by our present constitution. It provides that it shall have the jurisdiction of a circuit court in all cases of a criminal and *quasi* criminal nature, arising in the county of Cook, etc. And all recognizances and appeals taken .in that county in criminal and *quasi* criminal cases, shall be returnable and taken to that court. It is, then, necessary to determine whether this case is of a *quasi* criminal nature, as it is not claimed to be criminal. Wharton, in his Law Lexicon, defines *quasi* crime to be the act of doing damage or evil involuntarily. But this can not be the sense in which the framers of our constitution intended to use the term. When the entire section is considered, in the light of our jurisprudence, we must conclude that it was intended to embrace all offenses not crimes or misdemeanors, but that are in the nature of crimes —a class of offenses against the public which have not been declared crimes, but wrongs against the general or local public which it is proper should be repressed or punished by forfeitures and penalties. This would embrace all *qui tam* actions and forfeitures imposed for the neglect or violation of a public duty. A *quasi* crime would not embrace an indictable offense, whatever might be its grade, but simply forfeitures for a wrong done to the public, whether voluntary or involuntary, where a penalty is given, whether recoverable by criminal or civil process; and it would embrace prosecu-

376  Wiggins v. City of Chicago.  [Sept. T.

Opinion of the Court.

tions for bastardy, and informations in the nature of a *quo warranto*, etc.

In accordance with these views, it was held in the case of *Naylor* v. *The City of Galesburg*, 56 Ill. 285, that a suit to recover a penalty for the violation of a city ordinance was a *quasi* criminal prosecution. That case is conclusive of this question, and under it we must hold that the appeal was properly taken to the criminal court of Cook county, and it thus acquired jurisdiction.

The case was submitted to the court below, and tried without a jury; and after hearing the evidence, the court announced that he found the defendant "guilty," and in rendering the judgment it was ordered that "the defendant be fined the sum of $50, and pay the costs," and awarded execution in favor of the plaintiff. It has been repeatedly held by this court, that it is immaterial what the form of the verdict may be, so that it has the substance of a proper finding. *Minkhart* v. *Hankler*, 19 Ill. 48; *Bates* v. *Williams*, 43 Ill. 494; *Jarrard* v. *Harper*, 42 Ill. 457; and *Hartford F. Ins. Co.* v. *Vanduzor*, 49 Ill. 489. In this case it was immaterial whether the court said that he found the issues for the plaintiff, and found its debt to be $50, or found defendant guilty, and rendered judgment for that sum. This court has never inclined to apply strict technical rules in cases before justices of the peace, or on appeal, as in cases where there are written pleadings. In such cases substance and not form is regarded. We have been unable to find that any precise form of a verdict is given in the books. The rules require that it shall be responsive to the issue, but works on practice lay down as a rule that the verdict may be pronounced in open court, when it is entered in form by the clerk, who should then read it to the jury, to avoid all mistake.

It is urged that the court below entered a judgment for a fine, and not a formal judgment in debt. It is true that the judgment does not possess the formal parts of a judgment in debt, but it orders and adjudges that defendant be fined $50

and pay the costs of the proceeding, and awards execution for its collection. The judgment is unskillfully entered, but it is a finding and an adjudication, and could be collected. It is as formal as judgments usually entered by justices of the peace, and on an appeal will be sustained. See *Pendergast* v. *The City of Peru*, 20 Ill. 51; *Horton* v. *Critchfield*, 18 Ill. 135; *Chicago and R. I. R. R. Co.* v. *Whipple*, 22 Ill. 105. These cases are decisive of this question.

It is contended that the mayor, notwithstanding the ordinance, had no power to revoke the license, and that appellant was not liable to the penalty. The charter provides that the city shall have power to tax, license and regulate auctioneers, distillers, etc.; and it confers power to authorize the mayor to grant licenses for the various purposes authorized. Under this provision of the charter, the first section of chapter 23 of the ordinances provides, that if the person licensed shall violate any ordinance relating to his business, he shall be liable to be proceeded against for any fine or penalty imposed thereby, and his license shall be subject to be revoked, in the discretion of the mayor, or of the court or magistrate before whom he shall be convicted of such violation. The ordinance prohibits the sale of goods, chattels and personal property under a penalty of forfeiting the sum of $50.

The power conferred by the charter to tax, license and regulate auctioneers, authorized the city to adopt any reasonable ordinance for the purpose. The charter points out no particular mode. The city may tax, may license, and may regulate the business of auctioneers. The city may not directly prohibit the business, nor can it adopt such unreasonable regulations as would produce such results, or even be oppressive and highly injurious to the business. All means employed for the taxation, licensing and regulation of the business must be reasonable. And this is true of all ordinances of a city.

The question then recurs, is this a reasonable ordinance? The sum charged, the length of time the license is to con-

tinue, and the required bond and security for the faithful observance of the ordinances regulating the business, are not unreasonable requirements; nor do we see that, in regulating the business, a forfeiture of the license should follow a violation of the ordinance, and that the mayor should have the power of revoking the license when he should become satisfied of the fact, is unreasonable or oppressive. Such provisions may be the only effectual mode of regulating the business; and, whether it be so or not, we regard the ordinance as reasonable. The power must reside somewhere to revoke the license, and if it could only be done by the courts, the delays that could be produced in litigation would render such a provision entirely unavailing, as the license would expire before a final determination could be had.

It is also urged, that to determine the grounds of a forfeiture and declare it, is judicial, and that the mayor can not exercise such power; that he is not of the magistracy that belongs to the judicial department of the State. It is enough to say, in reply to this objection, that appellant agreed, by receiving the license, that the mayor might exercise the power at his discretion. This is the license:

"Permission is hereby given David Wiggins to follow the vocation of auctioneer, at No. 22, west Madison street, in said city, until May 1, 1873, subject to the provisions of all the ordinances now in force and that may hereafter be passed by said city relating to said vocation. This license may be revoked by the mayor at any time, at his discretion."

It was signed by the mayor, and otherwise properly executed. By accepting and acting under this license, appellant assented to its terms, and that the mayor might, at his discretion, revoke it, and he has no grounds to say that the mayor had no power, and that it could only be revoked by a judicial sentence.

It is next urged, that as the first section of the ninth article of the constitution has declared that the General Assembly shall have power to tax peddlers, auctioneers, brokers, etc.,

the General Assembly can alone impose such a tax, and for State purposes, and can not confer such power upon municipalities; that this provision operates as a prohibition on all other bodies, and for any other purpose than for State revenue, from taxing, auctioneers and others therein named. If this proposition be true, it amounts to a prohibition on the legislature from authorizing municipal bodies to raise revenue by any other mode than by assessments for improvements and taxes on the property within its limits.

But this is, obviously, not true. The ninth section, article 9, of the constitution, declares that the General Assembly may vest the municipal authorities of cities, towns and villages with authority to assess and collect taxes for corporate purposes; "but such taxes shall be uniform, in respect to persons and property, within the jurisdiction of the body imposing the same." To give full effect to this provision, we must hold that it embraces more than the mere assessment and imposition of a uniform tax on property. It evidently was designed to include the various modes of collecting taxes of persons pursuing various avocations. And in the first section of the same article, the legislature is authorized to tax peddlers, auctioneers, etc. The tax here provided for, is manifestly the sum of money which shall be paid to enable them to pursue their calling. Their property was required to be assessed by the first clause of the section, as it falls within the language employed; hence, it follows that the tax last referred to, as applied to the classes of persons enumerated, is a personal tax, imposed upon the person exercising the calling, and has no reference whatever to his property.

The ninth section of the same article clearly embraces the same idea, when it says persons may be taxed for municipal purposes. If such was not the purpose, why couple persons with property, and authorize both to be taxed? By the first section we see the meaning of a tax, when applied to the persons of the classes enumerated. The provision in the ninth section is broader and more comprehensive than that in the

first, as the ninth embraces all persons in the corporate limits, whilst the first embraces but the enumerated classes of persons. The provision in the ninth section is broad enough to embrace a tax imposed upon an auctioneer, and the charter adopted before the constitution became operative confers ample power on the city to impose such a tax; and as there is no repugnancy between the constitution and the charter in this respect, the provisions of the latter may be properly enforced.

The judgment is affirmed.

*Judgment affirmed.*