## LOUIS C. HUCK *et al.*

*v.*

## THE CHICAGO AND ALTON RAILROAD COMPANY.

1. TAXATION — *leased lines of railroad considered as property of lessee.* Where the charter of a railroad company authorizes it to acquire, by lease, purchase, or otherwise, any extension of its road, necessary and proper to its business, and provides that all property so acquired shall become part of the property of such corporation, and in pursuance thereof it leases other railroads forever, and provides by the terms of the leases that the roads so leased shall become, and be operated as, a part of the main line of the company leasing, the property so leased will, if not for all purposes, at least for the purposes of taxation, be regarded as the property of the company operating it under such leases.

2. SAME — *legislature may authorize municipal corporations to impose.* Section 1 of article 9 of the Constitution, which declares that the General Assembly shall have power to tax peddlers, auctioneers, brokers, and other classes therein enumerated, including persons or corporations owning or using franchises, does not operate as a prohibition on all other bodies to tax such persons, and for other purposes than State revenue, but the General Assembly may authorize municipal corporations to impose taxes on such persons and corporations.

3. SAME — *distribution of value of capital stock of railroads among counties.* Where a railroad company is operating leased roads in connection with its own, and as a part of its line, it is proper not only to assess the value of the tangible property of such leased roads against the lessee road, but, in distributing the value of the capital stock for taxation amongst the different counties in the proportion that length of the main track in each county bears to the whole length of the road in the State, the leased roads are to be considered and treated as parts of the main line.

4. SAME — *when courts will enjoin as to property exempt.* Whilst courts of equity will, in many cases, enjoin the collection of a tax sought to be enforced against property exempt from taxation, they will not enjoin the collection of the whole tax because in determining the valuation of an aggregate property exempt property may have been included as a factor.

APPEAL from the Circuit Court of Cook County; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. JAMES K. EDSALL, Attorney General, for the appellants.

Mr. JOHN P. WILSON, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

The State Board of Equalization assessed the capital stock of the Chicago, Alton and St. Louis Railroad Company in the year 1875 at $5,723,319, for purposes of taxation; and the object of the present suit is to enjoin the collection of all taxes, State, county, and municipal, extended upon that assessment.

The Chicago and Alton Railroad Company was incorporated by an act of the General Assembly in force February 18, 1861. The 1st section of the act appoints certain commissioners to organize the corporation, " subject to all the conditions, franchises, rights and privileges " conferred by the act. The 2d section empowers a majority of the commissioners to acquire, " by purchase, transfer, or conveyance, all and singular the railroad and all its property, real and personal, with the corporate rights, franchises, rights, privileges and effects now or hereafter belonging to, or owned or vested in, the Alton and Sangamon Railroad Company, afterwards called the Chicago and Mississippi Railroad Company, and also the Chicago, Alton and St. Louis Railroad Company." The 11th section empowers " the president and directors of the corporation, by and with the written consent of a majority of its stockholders, to acquire, by lease, purchase, or otherwise, any extension of its road necessary and proper to its business ; " and provides that " all the property so acquired shall become part of the property of said corporation, and shall be as fully subject to the provisions of this act as if the same constituted part of the original purchase by said commissioners hereinbefore named." The 13th section empowers the president and directors of the corporation " to do everything necessary to preserve and maintain its railroad property and effects, not inconsistent with the provisions of the act," and " to prescribe by-laws for the government of its officers, fix the rates of toll in the transportation of freight

and passengers over its railroad, and ordain rules and regulations for the division of its profits," etc.

The Joliet and Chicago Railroad Company, the Alton and St. Louis Railroad Company, and the St. Louis, Jacksonville and Chicago Railroad Company, by their several leases dated, respectively, January 1, 1864, April 16, 1864, and April 3, 1868, leased their railroads, and property used in connection therewith, to the Chicago and Alton Railroad Company, forever.   In each of the leases the Chicago and Alton Railroad Company covenants that it will, at all times, and at its own proper cost and expense, keep in good and sufficient repair and working order the several railroads ; make all needful repairs and additions thereto, including the renewal of track, etc., and all additions thereto which may be necessary and proper to secure the prompt and efficient dispatch of the ordinary business of the roads.   It also covenants, in the leases of the first two named companies, that the leased premises shall be forever used and operated *as a part of the main line of the Chicago and Alton Railroad.* And in all of the leases it covenants that it "will at all times hereafter pay all taxes, whether State, Federal, or municipal, which are or may hereafter be assessed against the premises hereinbefore demised and leased, at the time when said taxes may be due and payable."

The revenue law requires " every person, company, or corporation, owning, operating, or constructing a railroad, to return a schedule of the taxable property of such railroad," for taxation.   Rev. Stat. 1874, p. 865, sec. 40.  And the rolling-stock is to be listed and taxed in the several counties, towns, villages, districts, and cities, in the proportion that the length of the main track used or operated in such county, town, village, district or city bears to the whole length of the road *used or operated by such person, company, or corporation, whether owned or leased by him or them in whole or in part.*

We think it very clear, from the corporate powers conferred by its charter, the terms of the leases, and the pro-

visions of the revenue law referred to, that the Chicago and Alton Railroad Company is, for all purposes of taxation, at least, if not for all other purposes, to be regarded as the owner of all the leased property. See, also, *Kennedy* v. *St. Louis, Vandalia & Terre Haute R. R. Co.* 62 Ill. 396.

There can, therefore, have been no error in assessing the property held by virtue of the leases, in common with all its other tangible property, against it for taxation; and, as we understand the argument of the counsel for the company, it is not claimed there was any error in this respect.

But it is contended that the State Board of Equalization, in assessing the value of the capital stock, included in the assessment the capital stock of each of the lessor companies. A careful examination of the evidence relied on to establish this charge has convinced us that it has no foundation in fact.

The only evidence upon this point is the published report of the proceedings of the State Board of Equalization, in which appears the table given on page 356.

It will be observed, by reference to this table, that the amount of $5,723,319 is the assessed and equalized value of the capital stock, after deducting the assessed value of the tangible property of the Chicago and Alton Railroad Company alone; and, from the table, it is impossible that the capital stock of the other companies could have entered into the amount. Thus, the total capital stock of that company, paid up; its total indebtedness, except for current expenses; the market or actual value of the paid-up capital stock and debts as determined, and the equalized value of the capital stock and debts, are given in a single line. Against the Alton and St. Louis Railroad Company no amounts are carried out; but against the other two companies amounts are carried out, under each of these specifications, in consecutive lines, directly under that referring to the Chicago and Alton Railroad Company. The equalized valuation of the capital stock and debts of the Chicago and Alton Railroad Company is given at $10,175,135.

## TABLE "A."

*Showing the assessment made by the State Board of Equalization on the capital stock of Railroads, accompanying and made part of the Report of the Committee on Assessment of Capital Stock of Corporations.*

| NAME OF COMPANY. | CAPITAL STOCK PAID UP. | | TOTAL INDEBTEDNESS EXCEPT FOR CURRENT EXPENSES. | | Market or actual value of paid-up capital stock and debt, as determined by the State Board. | Capital stock and debt as equalized, with the aggregate assessment of the State by deducting 50 per cent of market or actual value. | Total equalized value of tangible property assessed by State Board and in counties. | Assessed and equalized value of capital stock, being excess of equalized value of capital stock and debt over equalized value of tangible property. |
|---|---|---|---|---|---|---|---|---|
| | Total. | Proportion in Illinois. | Total. | Proportion in Illinois. | | | | |
| Chicago and Alton.............. | $11,335,300 | $11,335,300 | $8,242,200 | $8,242,200 | $20,350,269 | $10,175,135 | $4,451,816 | $5,723,319 |
| Alton and St. Louis............. | .......... | .......... | .......... | .......... | .......... | .......... | .......... | .......... |
| St. Louis, Jacksonville and Chicago | 2,347,800 | 2,347,800 | 2,725,000 | 2,725,000 | 3,005,170 | 1,502,585 | .......... | .......... |
| Joliet and Chicago.............. | 1,500,000 | 1,500,000 | 305,000 | 305,000 | 1,866,300 | 933,150 | .......... | .......... |

The assessed value of its tangible property is given as $4,451,816. Deducting the latter from the former, we have precisely the amount assessed against the Chicago and Alton Railroad Company as the valuation of its capital stock subject to taxation — $5,723,319. But the equalized value of the capital stock and debts of the St. Louis, Jacksonville and Chicago Railroad Company is given as $1,502,585, and that of the Joliet and Chicago Railroad Company is given as $933,150. Adding these two amounts to that of the Chicago and Alton Railroad Company, as must be done if they are included in the assessment against the Chicago and Alton Railroad Company, under the same specification, and we have $12,610,870, from which to deduct $4,451,816, assessed value of tangible property, leaving to be taxed, as capital stock, $8,159,870 — being an excess of $2,436,551 over the amount actually assessed.

But counsel for appellee say they have the explicit statement of the Board of Equalization that the capital stock of the lessor companies was included in the assessment of the capital stock of the Chicago and Alton Railroad Company, and that it is found among their proceedings, in table marked " B." A note at the bottom of that table shows that the property of the lessor companies, embraced in the table, was assessed against the Chicago and Alton Railroad Company. But that table relates only to tangible property, and has no reference whatever to anything else. This property, as before said, was properly assessed against the Chicago and Alton Company. It was, for every practicable purpose, just as much its property as any other property over which it exercised ownership. It forms a part of its capital, and its assessed value was properly deducted from the equalized valuation of the capital stock of that company.

An objection is urged that the power to tax persons and corporations using franchises is limited to the General Assembly, and can not be conferred on municipal corporations.

Regarding the franchise as property, there can be no question of the right of the General Assembly to confer authority upon municipal corporations to tax it to the extent that it has existence within the corporate limits, for it is expressly provided by section 10 of article 9 of the Constitution that the General Assembly " shall require that all the taxable property within the limits of municipal corporations shall be taxed," etc. ; and, in *Wiggins* v. *City of Chicago*, 68 Ill. 372, we held, against a like objection, that section 1 of article 9 of the constitution, which declares that the General Assembly shall have power to tax peddlers, auctioneers, brokers, and the other classes therein enumerated, including persons or corporations owning or using franchises, does not operate as a prohibition on all other bodies to tax such persons, and for other purposes than State revenue ; but the General Assembly may authorize municipal corporations to impose taxes on such persons and corporations. It results that the objection is untenable on any ground.

Another objection urged is, the Chicago and Alton Railroad Company owns 337 miles of main track, and operates, under the leases, 210 miles of main track owned by the lessor companies, and the valuation of the capital stock of that company is improperly distributed to those counties where it operates simply the leased lines.

It is conceded by counsel that the valuation of rolling-stock is properly distributed to the counties where only the leased lines are operated, but it is claimed the phraseology of the statute does not authorize such a distribution of the valuation of capital stock. The statute requires (Rev. Stat. 1874, p. 876, sec. 110) that the aggregate amount of capital stock assessed shall be distributed proportionately to the several counties, in like manner that the property of railroads denominated " railroad track " is distributed. " Railroad track " is defined to be " right of way, including the superstructures of main, side, or second track and turnouts, and the stations and improvements of the railroad company on such right of way " (Rev. Stat. 1874, p. 865,

sec. 42); and its value is to be distributed to the several counties, etc., in the proportion that the length of the main track in such county, etc., bears to the whole length of the road in the State. Id. sec. 43.

The term "main track" is plainly used in the different sections of the Revenue Act, in contradistinction to side or second track and turn-outs, and is as applicable to tributary lines of railway as to trunk lines; and we think it wholly unimportant, in the present instance, that it so happens that some of the tracks included in the assessment of capital stock are leased lines. Such lines are to be listed by the corporation running or operating them. Rev. Stat. 1874, p. 866, sec. 48. And we have here, also, the express covenant of the lessee to pay the taxes assessed against this property. It is a misapprehension to suppose that the Chicago and Alton Railroad Company has no franchise as to these leased lines. As we have previously shown, its charter authorized it to obtain, " by lease, purchase, or otherwise, any extension of its road necessary or proper to its business; " and provides " that the property so acquired shall become part of the property of the corporation." It is authorized to operate these lines forever, charging fares and freights, with the same freedom that it may exercise in regard to any other part of its road; and the franchise attaching to the property is, therefore, necessarily the franchise of the Chicago and Alton Company.

We think the entire property was properly assessed together, without regard to the source or nature of the title.

The next objection to which our attention is invited is that the assessment in question included the value of $800,000 of shares of the capital stock of the Alton and St. Louis Railroad Company, which are by law exempt from taxation.

The proof on this question is, as shown by the abstract, " it was also admitted that, during the year 1875, the Chicago and Alton Railroad Company owned $800,000 of the

shares of stock of the Alton and St. Louis Railroad Company, so far as said company, under the law, had power to own such property."

It does not appear what this stock was worth, or that it had any value. Nor does it appear that it was, for that year, assessed for taxation otherwise than in appellee's capital stock.

The revenue law exempts from taxation the shares of stock of a corporation, where its tangible property or capital stock is assessed. But it does not appear here that the tangible property or capital stock of the Alton and St. Louis Railroad Company was assessed for taxation for the year 1875.

But, again, courts of equity do not relieve against assessments on account of mere irregularities. *Schofield* v. *Watkins*, 22 Ill. 66; *Chicago, Burlington & Quincy R. R. Co.* v. *Frary*, id. 34; *Munson* v. *Minor*, id. 594; *Metz* v. *Anderson*, 23 id. 463; *DuPage County* v. *Jenks et al.* 65 id. 275.

It was incumbent on appellee to show that it was injured, and to what extent, by the fact that these shares of stock were included in the assessment of its capital stock. *O'Kane* v. *Treat et al.* 25 Ill. 557. If they were of no value, they, obviously, did not affect the assessment — or if their value was purely nominal, the same result followed. We have no right to indulge in presumptions to defeat the collection of a tax.

A court of equity will, in many cases, enjoin the collection of a tax attempted to be enforced against property exempt by law from taxation; but that affects only the tax on the property exempt. Here, the claim is that exempt property was included as a factor in determining a valuation of an aggregate property, and that thereby the whole assessment is rendered void. The circumstance of these shares of stock being a factor in this valuation depended on their ownership at the time of the assessment; and, we think, to have availed of it, in any contingency, the fact of ownership should have been communicated to the Board of Equal-

ization before the assessment was made. Without knowledge there could be no fraud, and if there was mistake, it resulted from the fault of the corporation in not disclosing the fact. We are not inclined to hold that a party could base his right to equitable relief on a mistake resulting from his own wrong.

The remaining objection is that the entire assessment of the capital stock, for the year 1875, is void, because no valuation of capital stock was returned as to certain corporations. This same objection, on precisely the same evidence, was before us in *Chicago, Burlington, and Quincy Railroad Company* v. *Siders*, January term, 1877,* and we held the objection not well taken. It is unnecessary to repeat what was then said.

For the reasons given we are of opinion the court below erred in decreeing complainant the relief prayed by its bill. The decree of the court below is reversed, and the cause remanded, with direction to that court to dismiss the bill.

*Decree reversed.*