MICHAEL EVANS, Collector, etc.

v.

SETH GAGE ET AL.

</div>

1. REVENUE—BILL TO RESTRAIN COLLECTION OF A TAX—WHEN ALLOWED.—A bill in equity to restrain the collection of a tax will not be sustained, except in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation, or where the property has been fraudulently assessed at too high a rate.

2. EXCESSIVE VALUATION—FRAUD.—Excessive valuation alone is not sufficient to warrant the interference of a court of equity to restrain the collection of a tax. In the absence of fraud the valuation fixed by the officers charged by law with the duty of making the assessment, is final, and cannot be reviewed by the courts.

3. DUTY OF ASSESSOR—FAILURE TO CALL FOR A SCHEDULE.—Had the assessor entirely failed to call upon appellees for a list of their taxable property, and based his estimate upon information otherwise obtained, such omis-

sion on his part would have been an irregularity only, and would afford no ground for restraining the collection of the tax.

4. Application to township board—Duty of tax-payer.—The law provides an adequate remedy against excessive taxation by application to the township or county board to have the same reduced, and it is the duty of the tax-payer feeling himself aggrieved by an assessment to apply there for relief. No notice to him that an assessment of his property has been made is necessary. Every owner of personal property is deemed to know that the same is liable for taxation; the law fixes the time of the meeting of the township board for hearing objections to assessments, of which he is bound to take notice, and it is incumbent upon him, if he would insure protection against an excessive assessment, to make due inquiry, and if an assessment has been made of his property, to appear before the proper board, and ask for a review.

Appeal from the Superior Court of Cook county; the Hon. Samuel M. Moore, Judge, presiding.

Mr. Joseph F. Bonfield for appellant; upon the question of jurisdiction of a court of equity to restrain the collection of a tax, cited Republic Life Ins. Co. v. Pollak, 75 Ill. 292; C. B. & Q. R. R. Co. v. Cole et al. 75 Ill. 591; Spencer et al. v. The People, 68 Ill. 510; Swinney et al. v. Beard et al. 71 Ill. 27; Deming et al. v. James, 72 Ill. 78; Adsit v. Lieb, 76 Ill. 198; Porter et al. v. R. R. I. & St. L. R. R. Co. 76 Ill. 561; Nunda v. Crystal Lake, 79 Ill. 311; Beers v. The People et al. 83 Ill. 488.

That a party has an adequate remedy at law for the recovery of a tax illegally paid: Du Page County v. Jenks, 65 Ill. 275.

That a court of equity will not interfere to restrain the collection of a tax on the ground of an excessive assessment: Cooley on Taxation, 528; C. B. & Q. R. R. Co. v. Frary et al. 22 Ill. 34; Cook County v. C. B. & Q. R. R. Co. 35 Ill. 460.

Mr. E. G. Asay and Mr. W. L. Hirst, for appellee; contending that where the assessment has greatly exceeded the actual value of the property, the court has always enjoined the collection of the tax, cited Drake v. Phillips, 40 Ill. 388; Board of Supervisors v. Campbell, 42 Ill. 490; Cleghorne v. Postlewaite, 43 Ill. 428; Elliott v. Chicago, 48 Ill. 293; Darling v. Gunn, 50 Ill. 424; Du Page v. Jenks, 65 Ill. 275; Spencer et al.

v. The People, 68 Ill. 510; Porter v. R. R. I. & St. L. R. R. Co. 76 Ill. 561.

BAILEY, J. On the 10th day of February, 1876, appellees filed their bill in the Superior Court against appellant, as collector of the town of South Chicago, for an injunction to restrain the collection of a portion of the tax levied upon the personal property of appellees for the year 1875.

The bill alleges, in substance, that on the 1st of May, 1875, appellees were carrying on the millinery business in the town of South Chicago, with a stock of a fair cash value of $30,000, and no more; that about that day the assessor of said town, in person or by deputy, called at appellee's place of business in their absence, and inquired of one John N. Gage, who happened to be there, the value of appellee's stock of goods, and other personal property, and without requiring any schedule or list from appellees, or from any one authorized by them to make one, wrongfully, arbitrarily, fraudulently, and without notice to, or assent or knowledge of appellees, assessed said stock and personal property at $80,000; that said John N. Gage had no authority to give said assessor any information as to the value of said property, and in fact had no knowledge in relation to such value, and so informed said assessor; that neither said assessor, nor any of his deputies, called on appellees, or requested them to list their personal property, or left at their place of business, or elsewhere, any notice requiring them so to do; and that they had no knowledge that the assessor had sought or received any information from said John N. Gage, or any one else in regard to the value of said property until the early part of December, 1875.

The bill further avers that the assessment of personal property in said town for the year 1875, was grossly fraudulent and illegal, and that it was disproportionately made—some persons and corporations not being assessed at all, and others being assessed much too low, and that by reason of such discrimination, appellees will be greatly and irreparably injured; that the State Board of Equalization afterwards, wrongfully, arbitrarily, fraudulently and without notice to appellees, raised the

valuation of appellees' said personal property to $121,600, upon which valuation a tax of $5,094 was extended; that appellant, as collector of said town, threatens to levy upon appellee's personal property, unless immediate payment of said tax be made; that said assessor and collector are wholly irresponsible to respond to appellees in damages, in case said tax, after being collected, is declared void.

Appellees, in their bill, offer to pay a tax, properly extended, upon a valuation of $30,000, to wit: $1,255.70, and ask for a reference to the Master to determine how much of said tax was legal and how much illegal.

Appellant answered, without oath, denying the various allegations of fraud in said bill, and averring in substance that appellees' personal property in said town, on the first of May, 1875, subject to taxation, exceeded $80,000; that appellees were duly notified by the town assessor to make a schedule of their taxable property as required by law; that appellees did make a return, showing the value of their personal property to be $80,000; that the assessor, in conformity with such return, assessed their property at that sum, and that such assessment was just and reasonable.

The answer admits that the valuation of all personal property in Cook county, in 1875, was increased by the State Board of Equalization 52 per cent., and insists that such action of the State Board was just and legal, and for the purpose of effecting a proper equalization.

The answer further avers that appellees, since the filing of their bill, had voluntarily paid appellant, as a part of said taxes, the sum of $1,910.20.

To this answer a replication was filed, and the cause afterwards came on to be heard upon bill, answer, replication and proofs. At the hearing, Seth Gage, one of the appellees, testified that on the first of May, 1875, the personal property of his firm was worth $30,000. That was what they considered it worth for them to go along with the business. The first cost of all the goods in the store at that time was about $35,000. The fixtures were worth $1,000. There were accounts due the firm of from $160,000 to $180,000, and the firm were

owing from $160,000 to $170,000. If either way, they were owing more than was coming to them. At that time they had in bank $297.39. He did not see any schedule left at his place, and did not see one made out; but an unauthorized schedule was made out by his brother, John N. Gage, fixing the valuation at $80,000. This brother made his headquarters at appellees' store, but was not, and for a year and a half had not been, a member of the firm, had no interest in its affairs, was unacquainted with its merchandise, and unauthorized to make such schedule.

Charles Curley, the chief clerk in the office of the assessor of South Chicago, testified to having seen in said office a return signed " Gage Brothers & Co.," fixing the valuation of the property of the firm at $80,000. It was admitted that this paper had been destroyed, and a copy thereof made by this witness was produced and identified.

Upon these proofs the court below rendered its decree, finding "'that the valuation of the personal property of the complainants for the year 1875, for the purposes of taxation, as valued and made by the town assessor of the said town of South Chicago, was excessive, and that the taxes extended on such valuation, were also excessive," and decreeing that, upon payment by appellees of the sum of $382.26, in addition to that already paid, the residue of said taxes be perpetually enjoined.

The law is well settled in this State that a Court of Equity will never sustain a bill to restrain the collection of a tax, excepting in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation, or where the property has been fraudulently assessed at too high a rate. C. B. & Q. R. R. Co. v. Cole et al. 75 Ill. 591; Swinney et al. v. Beard et al. 71 Id. 27; Porter et al. v. R. R. I. & St. L. R. R. Co. 76 Id. 561; Village of Nunda v. Village of Chrystal Lake, 79 Id. 311; Cook County v. C. B. & Q. R. R. Co. 35 Id. 460. Neither the mere illegality of the tax complained of, nor its injustice or irregularity of themselves, give the right to an injunction in a Court of Equity. State Railroad Tax Cases, 2 Otto, 575, 613.

There can be little doubt, under the evidence, that the as-

Evans v. Gage et al.

sessment of appellee's property was excessive, and the court below, in finding that fact in the decree, was fully sustained by the proofs. But such excessive valuation alone did not warrant the interference of equity to restrain the collection of the tax based thereon. In the absence of fraud, the valuation fixed by the officers charged by law with the duty of assessing property for purposes of taxation, must be deemed to be final, and the courts have no power to review the same or change the valuation so fixed. The various officers and boards charged with the duty of fixing the value of property for purposes of taxation, act judicially, and their decisions can only be impeached for fraud. Upon this principle it has been frequently held by the Supreme Court that Courts of Equity cannot relieve against an excessive valuation unless it appears that the officers making the same have acted fraudulently. Adsit v. Lieb et al. 76 Ill. 198; Porter et al. v. R. R. I. & St. L. R. R. Co. Id. 561; Republic Life Ins. Co. v. Pollak et al. 75 Id. 292; C. B. & Q. R. R. Co. v. Cole Id. 591; Spencer et al. v. The people, 68 Id. 510.

While fraud is charged in the bill, it is denied in the answer, and we fail to find any proof in the record sustaining the charge. Nor does the decree recite that any fraud was found by the court below. The most that can be said is, that through misinformation or error of judgment, the assessor valued appellees' property at a sum considerably in excess of its actual cash value. The proofs give us no intimation that he acted dishonestly or with any design of placing the valuation of this property disproportionately high. There is evidence tending to show that the assessor, or his deputy, called at appellees' place of business with a view to obtaining a valuation of their property, and not finding appellees there, obtained a schedule from a brother of the senior member of the firm, who had previously been a partner in the firm, fixing the value of the property at $80,000. We cannot see why the officer making the assessment may not in all this have acted in perfect good faith and upon an honest belief that this schedule stated the value fairly and justly.

Even if we felt bound to hold that the party making this

schedule acted wholly without authority, and that the schedule must consequently be regarded as a mere nullity and no sufficient basis for the valuation, we cannot see how the case is in any different plight from what it would have been had the assessor entirely failed to call on appellees for a list of their taxable property, and based his estimate upon information otherwise obtained. His omission to call for such list would have been an irregularity only, and would afford no ground for restraining the collection of the tax. Board of Supervisors of DuPage County v. Jenks et al. 65 Ill. 275.

The law furnishes an adequate remedy against an excessive valuation, by application to the township board, or to the county board, to have the same reduced. By section 86 of the Revenue law, the town board meets on the fourth Monday in June of each year, for the purpose of reviewing the assessment of property in the town, and on application of any party considering himself aggrieved, they are required to review the assessment and correct the same, as shall appear to them just. Also, by section 97 of the act, the county board meets on the second Monday in July, and they, too, on application of any person considering himself aggrieved, are required to review the assessment, and correct the same, as shall appear to be just. Appellees might have appeared before either of these tribunals, and upon a proper showing, the excessive valuation of their property would doubtless have been corrected. They appear however to have made no effort to obtain relief under these sections, and having thus neglected to avail themselves of the remedy provided by law, they cannot now have relief in a court of equity. Adsit v. Lieb et al. supra.

But it is insisted that appellees had no notice of this excessive valuation until a long time after the town and county boards had held their sessions and adjourned, and that consequently they were guilty of no laches in failing to apply to those boards for relief. In this view we are unable to concur.

Appellees must be deemed to have known that their personal property was liable to valuation and assessment for purposes of taxation, and that if, for any cause, the assessor failed to obtain from them a statement of their personal property, it was

his duty to ascertain from other sources the amount and value thereof, and assess the same accordingly.   Had they delivered to the assessor a schedule showing a fair valuation of their property, they might, perhaps, have properly relied upon the presumption that such valuation would not be changed without notice to them, and thus be excused from the duty of giving the subject any further attention.   But they had no right to suppose that because they gave him no schedule of their property, it would not be assessed at all.   On the other hand, they were bound to know that an assessment of some kind would be made, and being necessarily in ignorance of the valuation made by the assessor, it was incumbent on them to ascertain the amount at or before the time of the meeting of the town or county board, so as to avail themselves of the relief provided by the statute.   The time of the meeting of these boards is fixed by law, and appellees were bound to take notice of it.   The very fact that they did not know the valuation the assessor had placed on their property, should have put them on inquiry, and they should have taken pains to ascertain the action of the assessor.   Having failed so to do in time to obtain relief in the manner pointed out by the statute, they cannot now complain of the excessive assessment.

We think the court below erred in granting the relief prayed for in the bill, and the decree will therefore be reversed, and the bill dismissed for want of equity.

<div align="right">Decree reversed and bill dismissed.</div>