### Charles Anderson v. City of Galesburg.

#### Gen. No. 4,413.

1.  ABSTRACT—*when presents nothing for review.* An abstract which is a mere index, which does not abstract the pleadings nor show that the court found for the defendant, nor any exceptions to that finding, nor any exceptions to the judgment of the court, presents nothing for review.

2.  DRAM-SHOP LICENSE—*when revocation of, valid.* The revocation of a dram-shop license is valid if the licensee, in violation of an ordinance, admitted persons to his dram-shop on Sunday, where such licensee was advised by the terms of the ordinance under which he was granted his. license, as well as by the indorsements on the back of such license, that the mayor had power to revoke the same for any violation of the ordinance; and the validity of such revocation is not affected when no notice was given to such licensee that the mayor would report such revocation to the city council for its concurrence at its next meeting, where such action by the mayor was required by ordinance.

3.  DRAM-SHOP LICENSE—*when fee upon revocation of, need not be re-*

*funded.* Where, for due cause, the license of a dram-shop keeper is revoked, he is not entitled to a refund of any portion of the fee paid upon its issuance.

Action of assumpsit. Error to the Circuit Court of Knox County; the Hon. George W Thompson Judge, presiding. Heard in this court at the October term 1904. Affirmed. Opinion filed March 8, 1905.

F. F. Cooke, for plaintiff in error.

W. C. Frank, for defendant in error.

Mr. Justice Dibell delivered the opinion of the court.

Anderson was a saloonkeeper in the city of Galesburg, acting under a saloon license issued to him by the city, for which he had paid a license fee in advance. Before the expiration of the term of his license, the mayor revoked the license, and the city council confirmed the revocation. Anderson brought this suit to recover what he calls the unearned proportion of the license fee, and he says in his brief the suit was brought because of the illegal revocation of the license by the city. It seems that the cause was tried without a jury, and that the court found for defendant, and rendered judgment accordingly. This writ of error is sued out to reverse that judgment.

Except as to the evidence and propositions of law, the abstract is a mere index. The pleadings and judgment are not abstracted. The abstract does not show that the court found for defendant, nor does it show any exception to that finding, or to the judgment of the court. The abstract, therefore, presents no question for our decision. Hawley v. Huth, 114 Ill. App. 29.

If, however, we assume that the questions argued are presented by the record, we are not able to reach the conclusions upon which plaintiff in error insists. The license expressly provided that plaintiff should be subject to the ordinances of the city of Galesburg. There were various conditions and provisions indorsed on the back of the license, and among them, these: " The mayor has power to revoke any license for violation of ordinance. This license is accepted with the full knowledge and upon the

express condition that all claims to the unearned portion of the license money are forfeited, whether the license was issued for the portion of a term and the full term paid for, or the person holding such license retires from business before the expiration of the term for which the license was granted." The ordinance of the city upon the subject of dram-shops was in evidence. Section 18 was in part as follows: "The mayor shall have power to suspend for a stated period or to revoke any license granted under the provisions of this chapter, for a non-compliance with or violation of any provisions of any city ordinance relating to the business for which this license is granted, either by the person holding such license, or any of his employees. * * * The mayor shall report to the city council at its next meeting such suspension or revocation, with the reasons therefor, and the council shall thereupon confirm or reject such suspension or revocation." Section 10 prohibited the keeper or person in charge of any dram-shop from allowing such dram-shop to be kept open, or suffering or permitting any person to have access to or to drink at or in such dram-shop, on Sunday or Sunday night. On Monday, June 19, 1889, the mayor caused a written notice to be served upon Anderson, the body of which was as follows: "Your license to keep a dram-shop at 65 South Kellogg street is hereby revoked for a violation of the ordinances of the city of Galesburg." On the same day, the mayor reported to the city council that he had revoked plaintiff's license for a violation of the ordinances in admitting persons to his dram-shop on Sunday, and the council concurred in that action of the mayor. In Wiggins v. City of Chicago, 68 Ill. 372, on page 378, it was held that an ordinance was not unreasonable or oppressive which provided that a license by a city to an auctioneer should be forfeited by a violation of the ordinance, and that the mayor should have the power of revoking the license when he should become satisfied of the fact; that where the license stated on its face that it might be revoked by the mayor at any time, the auctioneer, in receiving the license, agreed that the mayor

might exercise the power, and that he could not be heard to say that it could be revoked only by judicial sentence. It was also there said that if a license could only be revoked by the courts, the delays that could be produced in litigation would render such a provision entirely unavailing, as the license would expire before a final determination could be had. In Schwuchow v. City of Chicago, 68 Ill. 444, the revocation of a license to keep a dram-shop was under consideration. In that case, the ordinance under which the license was isssued contained this provision : " Any license so granted may be revoked upon written notice by the mayor, whenever it shall appear to his satisfaction that the party licensed shall have violated any provision of any ordinance of the common council relating to spirituous liquors." It was held that the city had the right to make it a condition that the dram-shop should be closed on Sundays, and to provide a forfeiture of the license for a violation of that condition; that the licensee received the license on condition that it might be revoked if he sold liquor on Sunday, and that he thereby assented to its terms and conditions, and that he had violated the condition, and the license was properly revoked. In Launder v. City of Chicago, 111 Ill. 291, it was held that where it was discretionary with the city to prohibit the business or to license it on such terms as the city chose, if the city granted a license it could impose such conditions and burdens as it saw fit. It was there said that the licensee, a pawnbroker, " sought for and obtained the city's license to transact such business, and took the privilege his license conferred subject to the restrictions and burdens imposed by the ordinance under which alone it could issue. This was an unmistakable recognition and admission of the validity and binding force of the ordinance. By taking such license, he secured immunity from prosecution for engaging in his vocation, if he conformed to the terms on which it was given him. The ordinance certainly did not invade any right of property or other right, but it did confer a right. Appellant having profited by taking a license, with full knowledge of the

conditions imposed, cannot refuse to carry out such conditions." Here plaintiff was advised, by the terms of the ordinance under which he was granted his license, as well as by the indorsements on the back of his license, that the mayor had power to revoke the license for any violation of the ordinance. If, with this knowledge, he violated the ordinance, he did so at his peril and the revocation was lawful.

But plaintiff complains that he was not notified that the matter would be reported to the next meeting of the council, and that he did not have an opportunity to appear, either before the mayor or the council, and defend himself, and that it was illegal to revoke his license without giving him that opportunity to be heard. We think this position unfounded. He was notified that the mayor had revoked the license, and he was bound to know that the ordinance required the mayor to report the revocation to the next meeting of the council, and that it would be the duty of the council either to confirm or reject the revocation. He could have appeared at the council meeting if he saw fit; and if he did not do so, he cannot complain that he did not receive some notice of that meeting which no law or ordinance required should be given him.

A very short time after he was served with notice of the revocation, the city procured a warrant for his arrest on a charge that on the preceding Sunday he had allowed his dram-shop to be kept open, and had permitted persons to have access to and drink therein, in violation of said section 10 of the ordinance. He was arrested, gave bail, and appeared the next day for trial, and waived a jury. The abstract says he pleaded guilty. The record says he pleaded not guilty. He was fined twenty-five dollars and costs, and no appeal was taken from that judgment. It was, therefore, conclusively established, in a legal proceeding brought by the city against plaintiff, that he did violate the ordinance on the preceding Sunday. Moreover, defendant introduced proof at this trial that on the Sunday preceding the revocation plaintiff's saloon was open, and his bar-

tender was behind the bar, serving liquor to several men who were there present drinking. This license was lawfully revoked.

Plaintiff also claims, that even though the license was lawfully revoked, yet the city was bound to pay him back the unearned portion 'of the license fee he had paid in advance. Section 5 of said dram-shop ordinance is as follows: " No dram-shop license shall be transferable or assignable. No portion of any money paid to the city for said license shall be refunded." Plaintiff took his license subject to these conditions. Plaintiff argues that this section means that no portion of any money paid to the city for a license which has been transferred or assigned shall be refunded, but as it provided that no license could be transferred or assigned, that interpretation is not sound. We understand this section to mean that no money paid to the city for any dram-shop license shall be refunded under any circumstances. It is also argued that the language we have quoted from the indorsement on the back of the license, implies that the unearned portion of the license money is forfeited where the license is issued for a part of a term and the full term paid for, and where the licensee retires from business before the expiration of the term for which the license was granted; and that it is thereby implied that the license money is not forfeited under any other circumstances. We are of opinion this position is unwarranted. It may be that if the city had undertaken to abolish all ordinances providing for licensing the liquor traffic, and to revoke all outstanding licenses, without any other cause, the holders of the licenses might have a right to reclaim what is called the unearned portion of the license fee. But here, this revocation was not a wrongful act by the city, nor a violation of its license to plaintiff. It was revoked for plaintiff's wrongful act in violating the ordinances, and revoked for causes specified in the license and the ordinances referred to therein. If plaintiff had obeyed the ordinances, he would have retained his license to the end of the term. He cannot make his wrongful act the basis for an action against the city.

The rulings of the court upon the propositions of law were in harmony with the views here expressed. We find no error in the record.

The judgment is affirmed.

*Affirmed.*