NEBRASKA TELEPHONE COMPANY, APPELLANT, V. CITY OF LINCOLN, APPELLEE.*

FILED JUNE 26, 1908. No: 15,586.

1. Telegraphs and Telephones: FRANCHISES. The franchise or right to occupy the streets of a city by a telephone company is not identical with the business or occupation of the company.

2. Double Taxation. An occupation tax measured by a percentage of the gross earnings of a telephone company, whose franchise is also taxed in connection with its tangible property according to its value as a going concern, does not tax the same property twice.

3. Telegraphs and Telephones: OCCUPATION TAX. The provision for an annual payment of $500 to the city of Lincoln in the respective franchise ordinances of two telephone companies "in consideration of the rights and privileges granted" is a sum exacted by the city for the privilege of using the streets under its proprietorship of the streets, and, while termed a "privilege tax," is in the nature of a rental charge or compensation for the use of the streets.

4. ———: ———. The exaction of a percentage of the gross earnings of its business in the ordinance granting a franchise to the Western Union Independent Telephone Company is an exercise of the taxing power of the city, and is a tax upon the business or occupation of conducting a telephone business within the city.

5. ———: ———: REPEAL. Such provision is also legislative in its character, and subject to repeal.

6. Taxation: UNIFORMITY. A provision in an ordinance imposing an occupation tax that "the sum and amount of the occupation tax

* Rehearing denied. See opinion, 84 Neb. ———.

or taxes on the gross receipts required to be paid under existing ordinances" may be deducted from the amount of the tax is not void because not uniform as to persons or property, since by its operation all persons engaged in the same occupation are taxed upon the same basis and in the same manner.

7. **Telegraphs and Telephones: Occupation Tax.** Under its charter, the city of .Lincoln may lawfully enact an ordinance imposing upon telephone companies a business or occupation tax measured by the gross receipts within the city, and the fact that tolls and rentals collected within the city are in part for messages over lines lying in part beyond the city limits does not invalidate the tax. *Western Union Telegraph Co. v. City of Fremont,* 39 Neb. 692.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*H. F. Rose* and *W. W. Morsman,* for appellant.

*John M. Stewart* and *T. F. A. Williams, contra.*

LETTON, J.

The Nebraska Telephone Company is a corporation operating a telephone system in the city of Lincoln with local and long-distance connections. In 1885 it obtained a franchise to transact business within the city. No provision was made in the ordinance for the payment of any consideration for the privilege. In 1894 an ordinance was passed giving it the right for a term of 50 years to construct and maintain subsurface conduits for carrying its wires and cables under ground. This ordinance provided for the payment of $500 annually to the city "as a privilege tax" in consideration of the rights and privileges thereby granted. In 1903 the city granted to the Western Union Independent Telephone Company a like franchise to operate a telephone system. This ordinance provided that the grantee should pay the city $500 annually "in accordance with the terms and conditions of the existing ordinances fixing the occupation tax upon telephone companies." The grantee was also required to

pay a further sum annually equal to 1 per cent. of its gross earnings during the first term of five years after the commencement of its business, and 2 per cent. for the next five years, and 3 per cent. annually thereafter during the term of the grant, which was for 50 years. The grantee transferred its rights under this ordinance to the Lincoln Telephone Company, which constructed and has operated a telephone system in Lincoln for several years. In 1907 ordinance No. 448 was passed, providing that all telephone companies doing business in the city should pay an occupation tax "equal to 2 per cent. of the gross receipts of such companies from exchange rentals and tolls taken within the city, not including any interstate service or services for the United States government"; and, after providing for penalties for delinquencies and for the filing of proper statements, the ordinance further provided that in the payment of said occupation tax any such company shall have the right to deduct therefrom "the sum and amount of the occupation tax or taxes on the gross receipts required to be paid by such company or companies to the city of Lincoln under existing ordinances." The Nebraska Telephone Company began this action, praying that the latter ordinance be declared void, and praying for an injunction to restrain the city of Lincoln from attempting to enforce the same or collect the tax imposed thereby. As grounds for the action, it alleged in the petition that the two telephone companies named are the only companies doing business in said city and that there is no probability there will ever be more; that the ordinance was framed and passed with reference to these companies; that there was not at that time any ordinance imposing any occupation tax or taxes on the gross receipts of telephone companies or any other ordinance imposing obligations upon such companies, except those named, and that the purpose and object of the provision permitting the companies to deduct from the amount of the tax "the sum and amount of the occupation tax or taxes on the gross

receipts required to be paid by such companies to the city of Lincoln under existing ordinances" was to permit each company to deduct the sum which they had severally agreed to pay by the respective franchise ordinances, and was a device, under the pretense of taxation, to impose an unequal burden on the plaintiff by permitting the Lincoln Telephone Company to subtract payments made in performance of its contractual obligations from the amount of the occupation tax ostensibly imposed upon it by the ordinance. The plaintiff alleges, further, that the tax imposed by the ordinance is not uniform in its operation and imposes unequal taxation, and is in violation of the charter of the city, the constitution of Nebraska and of the United States.

The city answered, admitting the passage of the ordinance, but denying the other facts alleged, and praying for an accounting of the amount of taxes due under the ordinance from the plaintiff, and a decree for their payment. The district court found the ordinance to be legal and valid, refused an injunction, and ordered the plaintiff to file a statement and pay the tax as required by the ordinance. From this judgment the Nebraska Telephone Company has appealed.

1. The plaintiff first contends that the ordinance creating the occupation tax is void because it imposes double taxation upon it by taxing the same thing for the same purpose twice, but under different names. The argument is that, because under the law in this state with reference to taxation of public service corporations their tangible property and their franchises, including all intangible rights and interests, are to be taken together, and the value of the whole be taken as a going concern, the right or privilege of doing business or carrying on the occupation is therefore taxed, and cannot be again taxed by virtue of an impost laid upon the right to carry on the occupation within the city; citing *Western Union Telegraph Co. v. City of Omaha,* 73 Neb. 527; *Nebraska Telephone Co. v. Hall County,* 75 Neb. 405; *State v. Savage,*

65 Neb. 714. The plaintiff in its brief says: "We fully concede that the fact that the property employed in a business is taxed as property and *ad valorem* is no objection to a separate tax upon the business in which the property is employed; provided, the business or occupation has not in fact been, or is not required by the law to be, taxed in taxing the property and franchises 'by valuation.'" So that the whole argument of the plaintiff on this point is based upon the proposition that the franchise and the business or occupation of the telephone company are identical.

But there is a distinction between the right or privilege to transact or carry on business within the corporate limits of a city and the actual operation of the business itself. It is the franchise, the grant of the right to do business, which must be taxed according to value, the same as other property. It is property and is susceptible of valuation. It is well known that the right to occupy the streets of a city by a corporation, either for gas, water, lighting, street railway, telegraph or telephone purposes, often constitutes an exceedingly valuable property, even before the construction of the operating plant or the doing of any business whatsoever. Such unavailed of franchises, as a matter of common knowledge, have in some instances been valued and sold at many thousands of dollars before one cent has been realized from the enterprise. On the other hand, the corporation owning a franchise and carrying on a business might be conducting its operations at an actual loss, its earnings being insufficient to pay running expenses, with no better prospects in the future, and, therefore, its franchise of little or no value, while its gross earnings might amount to a large sum of money; yet a tax upon the business, measured by the gross earnings, would be upheld as a business tax. A business tax measured by gross earnings is a tax upon the business which is actually performed, and is not a tax upon property in any sense, while a tax levied by valuation on the right to do business is a tax

upon property, irrespective of whether or not any business or occupation has been actually carried on. It seems clear that a property tax based upon the value of the franchise and a business or occupation tax based upon the gross earnings of a public service corporation are in nowise identical as to the subject of taxation, and do not constitute double taxation in any sense. On the contrary, it requires no argument to show that the exaction of a heavy business tax upon the gross revenues of a corporation would inevitably have the effect to lower the value of a franchise and to reduce its assessed value for the purpose of taxation as property. *People v. New York State Board,* 199 U. S. 48; *Wiggins v. City of Chicago,* 68 Ill. 372; *Goldsmith v. Mayor and Aldermen,* 120 Ala. 182; *City of St. Joseph v. Ernst,* 95 Mo. 360, 8 S. W. 558; *City of York v. Chicago, B. & Q. R. Co.,* 56 Neb. 572; *Producers Oil Co. v. Stephens,* 44 Tex. Civ. App. 327, 99 S. W. 157; *State v. Galveston, H. & S. A. R. Co.,* 100 Tex. 153, 97 S. W. 71; *Browne v. City of Mobile,* 122 Ala. 159; *South Covington & C. Street R. Co. v. Town of Bellevue,* 105 Ky. 283, 49 S. W. 23, 57 L. R. A. 50, and note. Gray, Limitations of Taxing Power and Public Indebtedness, sec. 1373. We think there is no merit in the plaintiff's contention.

2. The plaintiff next contends that the tax imposed is not equal and uniform, as required by the constitution of the state and by the charter of the city. The constitutional provision involved is contained in section 6, art. IX of the constitution, vesting municipal corporations with authority to assess and collect taxes, and providing that "such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same." The ordinances granting the franchise to the Nebraska Telephone Company (aside from the requirements of a $500 privilege tax) contain no provision for the payment of any portion of its gross earnings to the city, while the ordinance granting the franchise under which the Lincoln Telephone Company operates provides

for a payment annually of a portion of its gross earnings. The plaintiff's argument is that, though upon its face the taxing ordinance No. 448 seems to be uniform in respect to the telephone companies within the city, yet in reality it is a gross discrimination against it, for the reason that its effect is to deprive it of the advantage of its contract with the city; that by a contractual relation of the Lincoln Telephone Company it is compelled to pay the city a definite amount each year, and that by this ordinance it is allowed to deduct the amount of this contractual obligation from the tax, thus creating a gross lack of uniformity; that, since by virtue of its franchise obligation the Lincoln Telephone Company must for the greater portion of its franchise term pay 2 or 3 per cent. of its gross receipts to the city, if it is permitted to deduct these annual payments from the amount of the tax imposed by this ordinance, it will pay no occupation tax whatever, since the amount of its contract obligation will equal or exceed the tax. On the other hand, the city contends that the annual payments required to be made by the Lincoln Telephone Company by the terms of the franchise ordinance are in the nature of an occupation tax, and that the ordinance under consideration, instead of being subject to the objection of lack of uniformity, does, in fact, make that uniform which was not so before, since it requires each telephone company to pay an equal tax to the city upon the same occupation.

The difference seems to be in the view taken as to the obligations imposed upon the Lincoln Telephone Company by the franchise ordinance. If they are mere payments under contract in return for the privilege of using the streets, we would be inclined to hold with the plaintiff. To determine this question requires us to set out and examine the various provisions of the ordinances referred to bearing upon the payment of money to the city by each of these companies and by telephone companies generally. The ordinance granting the Nebraska Telephone Company

8

the right to lay underground conduits provides that, "in consideration of the rights and privileges granted to the Nebraska Telephone Company by this and prior ordinances, the said Nebraska Telephone Company shall, so long as it exercises such rights and privileges, pay into the city treasury of the city of Lincoln annually as a privilege tax the sum of $500, said sum to be paid on or before the first day of April in each year." The ordinance granting the franchise to the grantor of the Lincoln Telephone Company provides: "In consideration of the rights, privileges and franchise hereby granted, the Western Union Independent Telephone Company * * * shall pay into the city treasury of the city of Lincoln annually the sum of $500, said sum to be paid on or before the first day of April in each year * * * under and in accordance with the terms and provisions of the existing ordinance fixing an occupation tax upon telephone companies." The only "existing ordinance fixing an occupation tax upon telephone companies" was that granting the Nebraska Telephone Company the right to lay subsurface conduits, a portion of which is quoted. After this provision referring to the previously existing ordinance, it is provided: "And said Western Union Independent Telephone Company shall pay annually into the treasury of the city of Lincoln on the first day of April in each year a per cent. of its gross annual earnings from its plant in the city of Lincoln, as follows: One per cent. of its said gross earnings each year for the first five years, two per cent. of its said gross annual earnings each year for the next five years, and three per cent. of its gross annual earnings annually thereafter during the remaining period granted by this ordinance." The ordinance granting to the Nebraska Telephone Company the right to place subsurface conduits was the only prior ordinance which could be referred to, and the fact that the tax is named therein as a privilege tax," and not as "an occupation tax," as is stated in the later ordinance, does not, we think, change the legal effect or meaning of the latter. The $500 was

exacted each year from both companies in compensation
for the privilege of using the streets. It is not, strictly
speaking, an exercise of the taxing power, but is exacted
by virtue of the right of proprietorship in the public
streets possessed by the city, and, as provided in the first
of these two ordinances, is to be paid "in consideration
of the rights and privileges granted." The exaction is
not a tax upon the property of the corporations nor upon
their business, but is in the nature of a rental charge or
recompense for the use of the streets. *St. Louis v. West-
ern Union Telegraph Co.*, 148 U. S. 92. In that case a
charge of $5 per annum for each telegraph pole placed in
the city of St. Louis was held to be of the nature of a
rental charge, and not a tax, and was upheld as to the
right of the city to impose a reasonable charge for such
use.

The provision of the ordinance which follows requiring
a percentage of the gross earnings of the company to be
paid to the city is apparently an exercise of the taxing
power pure and simple, and is clearly a business or
occupation tax. No part of it became due or payable
until the business of receiving and transmitting messages
had actually been transacted. The $500 privilege tax is
payable as long as the respective companies exercise the
rights and privileges in the public streets granted to
them by the ordinances, and not exceeding 50 years, while
the tax upon the business does not begin to operate until
business is transacted. The tax is similar in its operation
to a tax upon the business of an auctioneer based upon
his gross annual sales, or one estimated by the number
of passengers carried by a street car company, or the
number of messages delivered by a telegraph company.
The privilege to use the streets might have been granted
gratuitously or in return for a lump sum, or, possibly, it
might have been sold to the highest bidder, but the ex-
action of a tax upon the business of the corporation stands
upon the same footing as a tax upon other occupations.
It was within the power of the city to impose the burden

upon the corporation in the same ordinance that granted the franchise, and, though ineffective as an occupation tax against other telephone companies, in all probability the grantee, having accepted the benefits of the ordinance, would be estopped to repudiate its burdens. But that company is not here complaining. There can be no doubt that the city has the power to repeal that portion of the ordinance imposing this obligation, and, if it had done so before it enacted ordinance No. 448, no objections on the score of lack of uniformity could possibly arise. The fact that a contract was embraced in the ordinance does not make it any less legislative in character, nor less subject to repeal, so far as the imposition of the tax is concerned. *Des Moines Gas Co. v. City of Des Moines,* 44 Ia. 505; *New Orleans C. & L. R. Co. v. City of New Orleans,* 143 U. S. 192; *Stanislaus County v. San Joaquin & K. R. C. & I. Co.,* 192 U. S. 201.

Moreover, the Nebraska Telephone Company accepted its franchise subject to the exercise of the taxing power of the city, which was liable to be used at any time. It has no standing in court to complain of the fact that an occupation tax is imposed upon it. It has always been subject to this contingency. Neither has it any right to object to the repeal of an ordinance imposing a tax upon its rival and competitor, or to the enactment of one that may have the same effect, even though the result may be to equalize the burdens of taxation, and thus deprive it of an advantage it possessed over the competing company. The fact that in these ordinances the payments are variously denominated privilege tax or occupation tax does not change their nature, nor does the fact that the payment required by the franchise ordinance is not dignified with any title whatever change its character. The tax upon gross receipts imposed upon the Lincoln Telephone Company is nothing more or less than a tax upon the business transacted by the company, although it is embraced within the terms of an ordinance which grants a franchise. The exaction is one made under the taxing

power of the city for revenue purposes, and not under the proprietary interest in the streets, and this fact in nowise interferes with the power of the city to impose an equal tax upon the Nebraska Telephone Company. The purpose of the present ordinance is to impose a uniform business or occupation tax upon both telephone companies, and, while a better or less cumbersome method might have been chosen to effectuate the purpose, the law will look to the substance of things rather than to their appearance.

It is probable that the tax may also be upheld upon the principle of classification. We see no reason why telephone companies may not be placed in classes depending upon whether they are required by the term of their franchise to pay a percentage of their gross receipts to the city or not, and requiring a lesser payment from those in the former class than from those in the latter. In the New York franchise tax law such a distinction is made, and those corporations which are required to pay any amount for a special franchise to a municipality are allowed to deduct that amount from the franchise tax levied by the state. These provisions were upheld both by the court of appeals of New York and by the supreme court of the United States (*People v. New York State Board,* 174 N. Y. 417; 199 U. S. 1); both courts holding that they did not deny the holders of some franchises the equal protection of the law or deprive them of their property without due process of law. These are not the specific objections made in this case, but the rulings are worthy of mention, and the opinions are enlightening.

3. The plaintiff's last contention is that this is an occupation tax upon business conducted beyond the corporate limits of the city, and that the city has no power to levy an occupation tax upon a business partially conducted beyond its corporate limits. The tax provided for by the ordinance is "the sum and amount of two per cent. of the gross receipts resulting from rentals and tolls of such company or companies on the business of such company or companies in the city of Lincoln, including the

rental charges resulting from business in the city of Lincoln, and all toll service and charges resulting from toll service from persons within this city to persons within this state, and all toll service paid at the office of any such company or companies in the city of Lincoln for toll service between the persons within this state and persons within this city. There shall be excepted from the provisions of this ordinance all toll service between persons in this city and persons outside of this state and all toll service interstate, and all interstate business and all toll service or rental charges on account of the United States government service or any of its departments, or state service or any of its departments, and no part or portion of the tax provided for in this ordinance shall be levied upon or assessed against or taken from any such business so excepted from the provisions hereof."

The plaintiff argues that in the transmission of messages from the city of Lincoln to points outside of the city a portion of the business transacted must necessarily be beyond the limits of the city, and that the city, therefore, has no power to tax the same, relying upon certain language in the opinion in the case of *Western Union Telegraph Co. v. City of Fremont,* 39 Neb. 692, and on the dissenting opinion of IRVINE, C., in that case. Whatever language might have been used in the argument in the opinion in that case, the law is squarely laid down by the decision that the license tax imposed upon the telegraph company is not invalidated by the fact that the telegrams received and delivered within the city were transmitted over the lines of the telegraph company from other points within the state, or that the messages received by it at its office or place of business in the city were transmitted to various other places in the state. It may be observed in this connection that the tax is not a tax upon the gross receipts, but it is a tax upon the occupation or business, the volume of which is measured by the gross amount of money received in the city of Lincoln for all business transacted, except United States,

state and interstate. The principles involved are discussed in the City of *Sacramento v. California Stage Co.*, 12 Cal. 134; *City of Los Angeles v. Southern P. R. Co.*, 61 Cal. 59. Moreover, the argument of the plaintiff carried to its ultimate conclusion would result in making it impossible to collect any occupation tax whatever based upon the receipts of telephone companies engaged in long distance business within the limits of the state. To illustrate, if the city of Lincoln may not base an occupation tax upon the receipts in this city of tolls paid for the use of the telephone company's instruments and wires from Lincoln to Omaha, on account of a portion of the business being transacted without the limits of the city, neither could the city of Omaha collect or impose such a tax upon the same messages for the same reason, and so with every other connection over long distance lines radiating from the city in every direction. It would be equally impossible to impose or collect such a tax upon the receipts from rural telephones, whose principal value depends upon their connection with the city exchange. It is evident that a large portion of the business of the telephone companies in the city is concerned with the transmission of long-distance messages and the collection of the tolls therefor, and the switchboard connections furnished rural subscribers and the collection of the rentals for their connection with the exchange. Since the volume of the business transacted in Lincoln is increased by the rural and long-distance lines, we see no reason why the amount of the occupation tax should not be increased in proportion to such volume, as measured and ascertained by a percentage of the gross receipts. There is no levy on the receipts themselves, but they are considered merely as a means of ascertaining the volume of the business transacted. Such a tax has been supported in *Postal Telegraph Cable Co. v. Charleston*, 153 U. S. 692; *State v. Hayne*, 4 S. Car. 403; *Maine v. Grand Trunk R. Co.*, 142 U. S. 217; *City of York v. Chicago, B. & Q. R. Co.*, 56 Neb. 572; *Horn Silver Mining Co. v. People*, 143 U. S. 305.

In conclusion, the new ordinance deprives the plaintiff of none of its rights under its grant. It neither takes away nor changes any part of its several franchises. It is true it imposes a tax upon its business, but it does the same upon all other telephone companies. The provision for deduction is of the amount of a like imposition, and is made to secure uniformity and equality of burden, which is what just taxation requires.

We conclude, therefore, that the judgment of the district court was correct, and the same is

AFFIRMED.