THE HANOVER FIRE INSURANCE COMPANY, Appellant, *vs.*
PATRICK J. CARR, County Collector, Appellee.

*Opinion filed April 24, 1925—Rehearing denied June 18, 1925.*

1. CORPORATIONS—*legislature may regulate or prohibit foreign corporations.* The General Assembly has power to prescribe the terms and conditions upon which foreign corporations shall be allowed to do business in Illinois, and it may, if it so desires, prevent such corporations from entering or transacting any business within the borders of the State, the only limitation upon such power being where the corporation is an instrumentality of the Federal government or where its business is strictly interstate or foreign commerce.

2. TAXES—*tax on net receipts of foreign insurance companies is tax on privilege of continuing to do business.* The tax on net receipts of foreign insurance companies under section 30 of the Fire and Marine Insurance act of 1869 as amended is a tax on the privilege of continuing to do business in Illinois, and, not being subject to the constitutional limitations which apply to the levying of taxes on property, the legislature may exact and levy such tax in any manner or by any method it chooses. (*People* v. *Kent,* 300 Ill. 324, and *People* v. *Barrett,* 309 id. 53, explained.)

3. INSURANCE—*foreign and domestic companies may be classified for purpose of taxation.* Insurance companies may be classified for legislative purposes as foreign and domestic, and taxation of foreign companies for the privilege of doing business while domestic companies of the same character are exempt from such tax is not an infraction of the constitutional provision against arbitrary classification.

4. SAME—*what necessary to entitle foreign insurance company to protection of fourteenth amendment of the Federal constitution.* While a foreign insurance company may be a citizen, it is not a citizen of the State entitled to the equal protection of the laws of that State, as contemplated by the fourteenth amendment to the Federal constitution, until it has complied with the conditions which entitle it to come and remain within the State.

THOMPSON and DUNN, JJ., and DUNCAN, C. J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

CHARLES S. DENEEN, OSCAR B. RYON, BATES, HICKS & FOLONIE, CHARLES E. WOODWARD, and SILBER, ISAACS, SILBER & WOLEY, (C. J. DOYLE, and E. M. GRIGGS, of counsel,) for appellant.

ROBERT E. CROWE, State's Attorney, (FRANCIS X. BUSCH, LEON HORNSTEIN, HIRAM T. GILBERT, WILLIAM H. DUVAL, and BULKLEY, MORE & TALLMADGE, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant, a private corporation organized under the laws of the State of New York for the purpose of carrying on the business of fire, marine and inland navigation insurance, filed its bill against appellee as county treasurer and collector of Cook county, praying for an injunction to restrain the collection of a certain tax hereinafter referred to. A temporary injunction was granted as prayed, and on final hearing a stipulation of facts was entered into, and the court entered a decree making the injunction permanent as to a certain amount of the tax not in dispute here and dismissed the bill of complaint as to the remainder for want of equity.

The tax complained of was that assessed under section 30 of the Fire and Marine Insurance act of 1869 as amended. (Cahill's Stat. par. 169, p. 73.) It is shown by the stipulation of facts that from May 1, 1922, to April 30, 1923, and for some years prior thereto, appellant conducted the business of fire insurance in the town of South Chicago, in Cook county, through agencies which it maintained there. It regularly procured the license issued by the Department of Trade and Commerce, and has annually paid the tax of two per cent on its gross premium receipts to the State under an act in relation to the taxation of nonresident corporations, etc., approved June 28, 1919. (Laws

of 1919, p, 628.) In 1923 the agents of appellant in the town of South Chicago made no return of net receipts to the board of assessors of Cook county. That board therefore entered as appellant's net receipts the sum of $90,000, added thereto a penalty of $45,000, and took one-half of this total amount, or $67,500, upon which to assess the tax required. The board of review fixed the net receipts of appellant at the sum of $90,824 and took the same at its full amount for assessment purposes. All personal property in Cook county except the net receipts of foreign fire insurance companies was scaled and debased in value, one-half the "full value" being taken for assessment purposes.

It is contended by appellant that section 30 of the Fire, Marine and Inland Navigation Insurance act is unconstitutional and void for the reason that it violates section 1 of article 9 of the constitution of Illinois by imposing a tax which is not imposed on domestic fire insurance companies or casualty companies; that such tax is not a privilege tax but is either a tax on property or a tax on business, and that, as either, it violates the constitutional provision as to uniformity. It is also said this section is void in that it violates the equal protection and due process clauses of the fourteenth amendment to the constitution of the United States. The further contention is made that even though the statute be held valid, the tax on net receipts must be assessed as personal property and scaled and debased as such.

Section 30 is as follows: "Every agent of any insurance company, incorporated by the authority of any other State or government, shall return to the proper officer of the county, town or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists of the county, town and municipality, and subject to the same rate of taxation, for all purposes—State, county, town and municipal—that other personal property is subject to at the place where located;

said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed: *Provided,* that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax or a license fee, not exceeding two per cent, in accordance with the provisions of their respective charters, on the gross receipts of such agency, to be applied exclusively to the support of the fire department of such city."

Section 1 of article 9 of the State constitution is as follows: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise; but the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

Some of the questions involved here were before this court in *People* v. *Kent,* 300 Ill. 324, and *People* v. *Barrett,* 309 id. 53, and were there decided against appellant's contentions here. Appellant argues, however, that what was said in the *Kent case* pertaining to the questions involved here was not necessary to the decision of the case and was wrong and should not be adhered to, and that the *Barrett case,* having been based on the *Kent case,* is wrong and should be overruled. In that case, as in the case at bar, extended briefs were filed by able counsel, some of whom

317—24

appear here, and the points involved were fully argued. An examination of the briefs filed in the *Barrett case* shows that counsel for various foreign insurance companies, appearing either as representing parties or as *amici curiæ,* there attacked this act on the ground that it is unconstitutional as violating section 2 of article 4 and sections 9 and 10 of article 9 of the State constitution and the fourteenth amendment of the United States constitution. It was there also contended that if the statute was valid the net receipts must be taxed as personal property, to be scaled and debased as in other cases of personal property taxed. It was argued in the *Barrett case,* as here, that contemporaneous construction on the part of the executive department of the State has continued for a sufficient length of time to be of controlling force.

*People* v. *Kent, supra,* was an action in *mandamus* against the respondent, as agent for various foreign fire insurance companies, to require him to make return of net receipts to the board of review in accordance with section 30 of the Fire, Marine and Inland Navigation Insurance act. In awarding the writ of *mandamus* it was held as a basis of that decision, and not as *obiter dictum,* as is argued, that the tax levied on the net receipts of such foreign insurance companies was not a property tax but was assessed on the business of insurance done; that the regulations relating to personal property tax had no application to the tax there provided. It was also held that there existed in the legislature power and authority to adopt the methods prescribed by which the amount of the tax is to be determined. In *People* v. *Barrett, supra,* it was again held that the tax on net receipts of foreign insurance companies is not a personal property tax and not entitled to be scaled or reduced. It was also there held that section 30 is not unconstitutional as violating section 10 of article 9 of the Illinois constitution, requiring uniformity of taxation, and that since the tax was not a property tax but a tax on the business of in-

surance done, it does not violate section 1 of article 9 of the constitution.

Appellant contends that if the *Barrett case* is right in holding that the tax in question in that case is a tax on insurance business done in the State, then such tax is a property tax and not an excise tax, and that since this is so, the act, which requires foreign fire insurance companies to pay this tax while foreign casualty companies and domestic fire insurance companies are not required to pay the same, is void as against the uniformity clause of section 1 of article 9 of the State constitution and in violation of the equal protection clause of the fourteenth amendment to the constitution of the United States. It is said that this court having held that this is a tax on business, either a logical or legal possibility of its being considered a privilege tax is precluded; that a privilege tax was by the act of 1919, hereinbefore referred to, levied as the consideration for the privilege of coming into the State to do business, while a tax on business is that levied after the insurance company has been allowed to do business in the State and is therefore levied on the property of a person within the State, and whether it be considered a property tax or a business tax, it is under either view subject to the constitutional requirement of uniformity, and is not in any view a privilege tax such as is authorized by the latter clause of section 1 of article 9 of our constitution, empowering the legislature to tax "insurance, telegraph and express interests or business."

The General Assembly has power to prescribe the terms and conditions upon which foreign corporations, other than corporations engaged in interstate commerce and those constituting instrumentalities of the United States government, shall be allowed to do business in this State. The legislature has, if it desires to use it, power to prevent foreign corporations from entering or transacting any business within the borders of this State. *Alpena Cement Co. v. Jenkins*

*& Reynolds Co.* 244 Ill. 354; *Raymond* v. *Hartford Fire Ins. Co.* 196 id. 329; *Hartford Fire Ins. Co.* v. *City of Peoria,* 156 id. 420; *Walker* v. *City of Springfield,* 94 id. 364; *Western Union Telegraph Co.* v. *Lieb,* 76 id. 172; *Ducat* v. *City of Chicago,* 48 id. 172; *People* v. *Thurber,* 13 id. 554; *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Paul* v. *Virginia,* 8 Wall. 168.

It is not contended that the legislature of this State may not levy such privilege tax as it chooses without regard to the constitutional provisions compelling uniformity and equal protection of the laws, but it is said that the tax here involved, having been held to be a tax on business, cannot be considered a privilege tax. This is a misconception of the term "tax on business." Having a right to prohibit a foreign corporation from entering the State to do business, it follows that the legislature may exact such compensation for that privilege as it sees fit and levy the same in any manner or by any method it chooses. The tax provided by section 30 does not purport to be a property tax. Net receipts, of course, are personal property. The right given to the legislature to provide for the levying of taxes on property requires that the property be valued by an assessor or some person provided by the law to fix the valuation thereof. The Revenue act, in compliance with this mandate, provides that the assessor fix the value of such personal property as of the first day of April. It will be noted that under section 30 complained of, the net receipts of foreign insurance companies such as appellant are not to be valued by an assessor or other authority, nor is the assessment to be based on property having a situs in this State on April 1. In fact, it is not required that the net receipts acquire or retain a situs in this State at any time. It is a tax on the amount of business done and for the privilege of continuing in such business, and the net receipts of such business are used as the basis of determining that tax. Such net receipts and the method pre-

scribed constitute the thing and the means by which is to be determined the amount which foreign fire, marine and inland navigation insurance companies shall pay to the State, and to the various municipalities included in the act, as compensation for the right to do business in the State and in such municipalities. Section 30 provides that this tax shall be "in lieu of all town and municipal licenses," except for the support of organized fire departments. No constitutional prohibition exists against such a tax as a condition to the right to do business. A tax on business as provided in this act, is not, as argued, to be distinguished from a privilege tax. Considered as either, it is a tax on the right to do business in this State and is subject to no constitutional limitations, except that it be "uniform as to the class on which it operates." *Walker* v. *City of Springfield, supra; People* v. *Thurber, supra; Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181; *Scottish U. & M. Ins. Co.* v. *Herriott,* 109 Iowa, 606.

The fact that a tax is a privilege tax does not necessarily require that it be paid as a condition precedent to entering the State. Such a condition, being precedent, could, of course, be met but once. However, the greatest financial benefit to such a company flows from the continuation of the privilege to do business. Compensation for that privilege should be based on the benefits actually derived from the business done under such privilege, and such compensation must necessarily be assessed in some manner after the business is done and the benefits thereof received. Section 30 provides the method by which the amount of this compensation shall be determined and assessed.

Counsel for appellant argue that the fact that the act requires that these net receipts shall be entered on the same tax lists and be subject to the same rate of taxation, for all purposes, as other personal property is entered and is subject, shows that it is a personal property tax; that its payment is not made a condition to the right to do business

in the State, and that it therefore cannot be considered a privilege tax. This is a misconception of the provisions of the statute pertaining to this tax.

Section 22 of the act relating to fire, marine and inland navigation insurance, aside from specifying certain requirements imposed upon foreign insurance companies seeking to do business in this State and specifying what shall be necessary to secure the right of entry, further provides: "Nor shall it be lawful for any agent or agents to act for any company or companies referred to in this section, directly or indirectly, in taking risks or transacting the business of fire and inland navigation insurance in this State, without procuring annually from the Insurance Superintendent a certificate of authority, stating that such company has complied with all the requisitions of this act which apply to such companies and the name of the attorney appointed to act for the company." The provisions of section 30 requiring the return of net receipts of this tax are a part of the "requisitions of this act." It is evident, therefore, from the language of section 22 quoted, that before appellant may continue in business in this State its agent shall procure annually from the Insurance Superintendent of the State or his successor in law, a certificate showing that it has complied with the requirements of section 30 with reference to this tax. Such certificate cannot be lawfully issued without such showing. This act provides no other means of collecting such tax and no reference is made for its collection.

That it was the intention of the legislature that the payment of this tax be made a condition upon which the business of fire insurance may be continued in this State by a foreign insurance company is further shown by an act entitled "An act providing a penalty for a violation of section 30 of an Act entitled: 'An Act to incorporate and govern fire, marine and inland navigation insurance companies doing business in the State of Illinois,' approved and

in force March 11, 1869," approved June 22, 1893. (Smith's Stat. 1923, p. 1157.) The first section of that act declares that any foreign insurance company coming under the provisions of the act of 1869, authorized to do insurance business in this State, which places risks or policies of indemnity upon property located in this State in any other manner except through its regularly authorized agents, shall be deemed to have violated section 30 of the Fire, Marine, etc., act herein referred to. By section 2 of that act any company so violating section 30 shall have its authority to transact business in the State revoked by the Auditor of Public Accounts for a period of not less than ninety days, and when so revoked it shall not be re-issued until such insurance company has shown "complete compliance with the laws of this State governing fire, marine and inland navigation insurance companies," and has shown that all taxes and penalties and expenses due thereunder have been paid. It seems clear, therefore, that this tax is levied as compensation for the privilege of continuing their business in the State.

While the act of 1919, entitled "An Act in relation to the taxation of non-resident corporations, companies and associations for the privilege of doing an insurance business in this State," approved June 28, 1919, (Laws of 1919, p. 628,) imposes an annual State tax equal to two per cent on the gross amount of premiums received by any foreign insurance company during the preceding year, less certain specified deductions, for the privilege of doing business in this State, that fact does not show that the tax imposed on the business of fire insurance by section 30 is not likewise a tax for the privilege of doing business. The act of 1919 requires that the tax there levied be paid to the State. Section 30 requires that the tax be apportioned among the State and the different municipalities of the situs of the agency. A valid reason is seen for this distribution of the tax. The foreign fire insurance company takes its net proceeds largely from the vicinity of its agencies, and it is but just that it

return to the municipality in which its agency is located something in lieu of the taxes that would otherwise be realized from such net receipts as are taken away.

The power to tax insurance interests or business is expressly conferred by the second clause of section 1 of article 9 of the constitution. That section also requires that the act of the General Assembly creating such tax shall operate uniformly as to the class to which it applies, and appellant argues that since domestic fire insurance companies make the same sort of contract, transact the same sort of business and are likewise doing business within the State, they belong to the same class as foreign fire insurance companies which have been permitted to come into the State, and that therefore a tax levied against the latter which the domestic fire insurance companies do not have to pay is not uniform, as required by the section of the constitution referred to. Counsel are in error in supposing that for purposes of taxation under this section of the constitution foreign and domestic insurance companies belong to the same class because they are doing the same kind of business within this State. There is no reason why insurance companies may not be divided into classes, the very point of distinction in which shall be the domicile of such companies,—*i. e.,* whether foreign or domestic. The levying of taxes upon foreign fire insurance companies and not upon domestic companies of the same character, as compensation for the right to do business, is not, therefore, an infraction of this provision of the constitution. *Hughes* v. *City of Cairo,* 92 Ill. 339; *Ducat* v. *City of Chicago, supra; Walker* v. *City of Springfield, supra; People* v. *Thurber, supra; Insurance Co.* v. *Bradley,* 83 S. C. 418.

In *Home Ins. Co.* v. *Swigert,* 104 Ill. 653, it was held that not only can the legislature classify insurance companies into domestic and foreign but may likewise divide foreign insurance companies into classes for purposes of taxation; that such companies cannot complain of a classi-

fication which is made the basis for admitting them into this State even though such insurance companies are put in different classes, for the reason that the State may exclude them entirely, and, therefore, in permitting them to enter may impose whatever conditions it chooses. Nor is there in this any injustice. Foreign insurance companies have or may have in this State on April 1, when assessments on personal property are made, practically nothing of value, while domestic fire insurance companies are assessed for all of their holdings, both real and personal, including their choses in action, little, if any, of which tax is paid by foreign insurance companies. If it were to be said that section 30 violates the uniformity clause of the constitution for the reason that foreign fire insurance companies, when admitted to this State, should not be required to pay any tax which domestic insurance companies do not pay, by the same token domestic insurance companies, who pay on all of their property, could justly complain that the Revenue law as applied to them is invalid for the reason that it, in effect, does not apply to foreign insurance companies doing a like business in the State, because such companies, by reason of the withdrawal of their net receipts, are able to escape all, or practically all, property taxation.

The contention of appellant that this tax is void for want of uniformity cannot be sustained.

Nor is section 30 open to the objection that it violates the equal protection clause of the fourteenth amendment to the constitution of the United States. The portion of the fourteenth amendment referred to provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction, the equal protection of the laws." While a foreign insurance company may be a citizen, it is not a citizen of the State entitled to the equal protection of

the laws of that State, as contemplated by the fourteenth amendment to the constitution of the United States, until it has complied with the conditions which entitle it to come and remain within the State. The only limitation upon the power of the State to prevent a foreign corporation from doing business within its limits, or to exact conditions for allowing a corporation to do business in the State, arises where the corporation is an instrumentality of the Federal government or where its business is strictly commerce, interstate or foreign. *Pembina Mining Co.* v. *Pennsylvania, supra; Paul* v. *Virginia, supra; Pensacola Telegraph Co.* v. *Western Union Telegraph Co.* 96 U. S. 1; *Missouri* v. *Lewis,* 101 id. 22; *Horn Silver Mining Co.* v. *New York,* 143 id. 305; *Home Ins. Co.* v. *New York,* 134 id. 594.

We are of the opinion that there is no equity in this portion of the bill of appellant and the superior court did not err in dismissing the same. The decree of that court will therefore be affirmed.                                *Decree affirmed.*

THOMPSON and DUNN, JJ., dissenting:

The constitutional objections to section 30 of the act to incorporate and govern fire, marine and inland navigation insurance companies doing business in this State presented for decision in this case have not been presented or decided in any of the cases involving the construction of said section heretofore considered by us. *People* v. *Barrett, supra,* was a *mandamus* proceeding brought by the city of Chicago, an agency of the State which spends public funds raised by taxation, against the board of review of Cook county, a tax-assessing agency of the State. No insurance company or other tax-paying person was a party to that litigation, and therefore the question here presented could not have been presented in the proceeding. The validity of an act can only be questioned by a party to a suit whose interests will be adversely affected by a judgment or decree.

Nowhere in the opinion is the question of uniformity discussed, and it is clear from reading the opinion that the question was not there considered by the court. In *People* v. *Kent, supra,* the action was a *mandamus* proceeding brought by the city of Chicago against the agent of nineteen foreign insurance companies, which were named. The constitutional questions presented in this case could have been presented in that case, but it is clear that the only questions presented by the parties and decided by the court were whether the tax involved was a property tax or excise tax and whether the agent could be compelled by *mandamus* to make the return required by section 30. The court held specifically that the tax involved was a tax on the business of insurance, which is authorized by the second division of section 1 of article 9 of our State constitution. It was said in the discussion of the question that this section of the constitution requires such tax to be fixed by general law uniform as to the class on which it operates, but whether the tax authorized by section 30 is a uniform tax was not considered, discussed or decided. In *Walker* v. *City of Springfield, supra,* the sole question before the court was the validity of a city ordinance imposing a tax based on premiums received by foreign insurance companies. The court expressly held that the tax was one referred to in the proviso to section 30, and that the tax mentioned in the first part of the section, which is the tax involved in the case at bar, was a different tax authorized for a dissimilar purpose. The only constitutional questions raised by the parties and considered by the court in the *Walker case* were that the tax imposed by the ordinance was double taxation and that it was not uniform. The court held that the tax there under consideration was a privilege tax or license fee and that it was not double taxation and that it was uniform on the class on which it operated. No reference was made to the business tax mentioned in the part of section 30 here under consideration, and such a tax not

being involved in the proceeding, manifestly no ruling was made with respect to it. No case is cited in support of the opinion filed where the objection here presented for decision was considered or decided and we are of the opinion none can be found. It will appear from the discussion which follows that we do not agree with the construction given to section 30 of the act of 1869, nor with the construction given to other acts relating to the business of insurance which bear indirectly on the question before the court.

Our constitution recognizes a distinction between a tax on the insurance business, which is an occupation tax, and a tax on the corporation using the privilege of doing an insurance business, generally called a franchise tax. In 1919 the legislature passed an act in relation to the taxation of non-resident insurance companies. This act provides: "That each non-resident corporation, company and association licensed and admitted to do an insurance business in this State shall, except as herein otherwise provided, pay an annual State tax for the privilege of doing an insurance business in this State, equal to two percentum on the gross amount of premiums received during the preceding calendar year on contracts covering risks within this State. * * * The tax herein provided for shall be in lieu of all license fees or privilege or occupation taxes levied or assessed by any municipality in this State, and no municipality shall impose any license fee or privilege or occupation tax upon any such corporation, company or association, or any of its agents, for the privilege of doing an insurance business therein; but this act shall not be construed * * * to prevent the levy and collection of the tax authorized by section 30 of an act entitled, 'An act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois.'" (Smith's Stat. 1923, p. 1157.) Other sections of the act provide the method of computing the amount of the annual tax and of collecting it, and section 12 makes the penalty for failing to

comply with the provisions of the act a revocation of the license to do an insurance business in this State. The title and the body of the act indicate clearly that this is a franchise tax collected from foreign insurance companies as compensation to the State for the privilege granted by it to the company to do an insurance business in this State. The provisions of section 1 of the act clearly indicate that it is to be the only franchise tax collected by the State or any of its agencies; but the right of local taxing authorities, granted by other statutes, to collect from such companies an occupation tax and a tax on the real and personal property located within the several taxing districts is specifically preserved.

No reference is made in the title of the act of 1869, of which section 30 is a part, to taxation, nor is there any provision in the act levying a tax or providing a penalty for the non-payment of a tax. The act is one "to incorporate and govern fire, marine and inland navigation insurance companies doing business in the State of Illinois." The first twenty-one sections of the act relate to the incorporation and government of domestic companies. Section 22 relates to the method by which foreign companies may be admitted to do business in the State and to the government of companies so admitted. Before there is granted to a foreign insurance company the right to do business in this State, section 22 requires (1) proof that a certain specified capital has been subscribed and paid, (2) the appointment of a resident attorney in fact and the filing of a certificate of such appointment, (3) the filing of a certified copy of its charter and a verified statement showing details of its organization, assets and liabilities, (4) the deposit with the insurance department of securities, and (5) the securing of a certificate of authority for its agents; and its right to continue to do business here depends upon the filing of an annual statement of its financial condition. Compliance with the provisions of section 30 is not made a prerequisite

for admission to do an insurance business in this State nor to continue such a business. The section does not require any act on the part of the company at any time. It requires the agent of a foreign insurance company to return to the proper taxing authorities the amount of the net receipts of his agency. In order to prevent a circumvention of the legislative intent there was passed in 1893 an act providing a penalty for violation of section 30. This act makes it unlawful for any insurance company to do an insurance business in this State except through legally authorized resident agents and penalizes any company writing insurance otherwise than through resident agents possessing proper certificates of authority by revoking its license to do business in this State. (Smith's Stat. 1923, p. 1157.) This statute acts directly upon the foreign insurance companies, and a compliance with the act of 1893 is an additional prerequisite to the right of such companies to do an insurance business in this State. Section 30 acts directly upon the agent of foreign insurance companies, and if such agent fails or refuses to make the return required by the section he may be compelled by *mandamus* to make the return. (*People* v. *Kent, supra.*) Section 30 does not levy a tax on net receipts or on any other property of foreign insurance companies. It simply requires the agent to return to the proper taxing authorities the amount of the net receipts of his agency for the preceding year, so that the taxing authorities may enter this amount on the tax list for the purpose of determining the amount of tax to which the particular insurance business shall be subjected in the particular taxing district. The method of collecting the tax is not fixed by section 30 or any other section of the act of 1869.

That the tax on net receipts, to which the provisions of section 30 relate, is not a tax levied as compensation for the privilege of doing an insurance business in this State is no longer an open question. In *City of Chicago* v. *James,* 114 Ill. 479, and in *Walker* v. *City of Springfield, supra,* it

was held that the portion of section 30 preceding the proviso relates to a tax on the business of insurance as distinguished from a fee for a license to exercise the privilege of conducting an insurance business.  In *People* v. *Kent, supra,* it was held that this tax is a charge made upon the business of insurance for the purpose of compelling that business to bear its just proportion of the burdens of government.  The amount of the net receipts of the business is used as a measure for determining the amount of the annual tax, and the tax is levied without regard to the value of the assets or physical property of the insurance company within the State and without regard to the number of policies issued or the value of the property insured.  In *People* v. *Cosmopolitan Fire Ins. Co.* 246 Ill. 442, we held that the tax on net receipts collectible under section 30 is not a fee for a license to do an insurance business in this State.  Section 30 does not assume to exact a fee as a prerequisite to the granting of authority to do an insurance business in this State, but it assumes that the authority to do such a business exists independently of its provisions.  There is a clear distinction between the privilege to transact a business within the limits of a State and the actual operation of the business itself.  The one looks to preparation for engaging in the business, and the other is the actual engagement in it.  (*Greene* v. *Kentenia Corp.* 175 Ky. 661, 194 S. W. 820.)  It is just as clear that there is a distinction between a tax on a particular business and a tax on the person exercising the privilege of engaging in that business.  The payment of the latter is a condition precedent to the right to engage in the business, while the former is merely a charge on the business for the purpose of raising revenue for the maintenance of government.  The right of a foreign corporation to do business in this State is a privilege, and the tax levied against the corporation as compensation for the right to enter or remain in the State is what is commonly called a privilege or franchise tax.  It may be imposed for

the grant of a privilege which is never exercised by the licensee. On the other hand, a tax on the business of the corporation is a charge upon the result of exercising the privilege when exercised. This distinction between a business tax and a privilege tax was recognized and applied in *Nebraska Telephone Co.* v. *City of Lincoln,* 82 Neb. 59, 117 N. W. 284.

A State has the right to prohibit a foreign insurance company from exercising any part or all of its charter powers within its borders, to impose such terms and conditions upon its right to do business in the State as it may see fit, or to entirely exclude it from the State. (*Alpena Portland Cement Co.* v. *Jenkins & Reynolds Co.* 244 Ill. 354; *Hartford Fire Ins. Co.* v. *City of Peoria,* 156 id. 420.) The privilege of doing an insurance business in this State accorded to a foreign corporation being distinct and different from the privilege accorded to a domestic corporation, the legislature, in fixing the tax on the privilege of doing business, has the power to place foreign corporations in one class and domestic corporations in another, (*Hughes* v. *City of Cairo,* 92 Ill. 339,) and also to subdivide foreign corporations into different classes. (*Home Ins. Co.* v. *Swigert,* 104 Ill. 653.) On the other hand, in exercising its power to tax a business, the legislature is specifically required by section 1 of article 9 of our State constitution to tax "by general law, uniform as to the class upon which it operates," and under the fourteenth amendment to the Federal constitution the State cannot "deny to any person within its jurisdiction the equal protection of the laws." These provisions apply to a foreign corporation which has complied with all the conditions of admission prescribed by the State and which has been granted the privilege of engaging in business within the State. The law is settled that after a foreign corporation gets into the State its burdens shall be no more onerous than those of domestic corporations for exercising the same character of privileges. (8 Fletcher's

Cyc. of Corporations, sec. 5755; *Southern Railway Co.* v. *Greene,* 216 U. S. 400, 30 Sup. Ct. 287; *Security Savings and Loan Ass'n* v. *Elbert,* 153 Ind. 198, 54 N. E. 753.) The question of making classifications for the purpose of enacting laws concerning matters within its jurisdiction is primarily for the legislative department, and it can become a judicial question only when the action of the law-making body is clearly unreasonable, arbitrary and discriminatory. But such classifications must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.  (*McGrath* v. *City of Chicago,* 309 Ill. 515; *Royster Guano Co.* v. *Commonwealth of Virginia,* 253 U. S. 412, 40 Sup. Ct. 560.)  The power of taxation is an essential and inherent attribute of sovereignty, belonging, as a matter of right, to every independent government.  Therefore the legislature, subject to constitutional restrictions, may tax all property or only certain kinds of property, all occupations or only certain occupations, and all privileges or only certain privileges.  Constitutional provisions relating to the power of taxation do not operate as grants of the power of taxation to the government but instead merely constitute limitations upon a power which would otherwise be practically without limit. The limitations fixed by our State constitution are (1) that all taxes levied on property shall be by valuation, and (2) that all excise taxes levied (*a*) on business or (*b*) on persons using a privilege shall be by general law, uniform as to the class upon which it operates.  The legislature may classify businesses for the purpose of taxation, but when the classification is made, all, which by the existence of the facts on which the classification is made fall within it, must be subjected to the tax imposed. *Pullman Palace Car Co.* v. *State,* 64 Texas, 274; 53 Am. Rep. 758; *Hager* v. *Walker,* 128 Ky. 1, 107 S. W. 254; *Mutual Reserve Fund Life Ass'n* v. *Augusta,* 109 Ga. 73, 35 S. E. 71,

317–25

The Hanover Fire Insurance Company derives its receipts from premiums paid on policies issued on the following among other classes of insurance: (1) Fire, (2) lightning, (3) tornado, (4) navigation and transportation, (5) fire apparatus and damage by same, (6) crop and livestock, (7) explosion, and (8) automobile. Domestic insurance companies derive their receipts from identically the same classes of insurance business. Casualty companies, both domestic and foreign, write insurance covering four of the same classes, namely, fire apparatus, crop and livestock, explosion and automobile. Unincorporated entities permitted by the laws of this State to do an insurance business under regulations prescribed by law are engaged in the same insurance business as the incorporated companies mentioned in section 30. In transacting the business of insurance these four groups of persons or corporations are in direct competition with each other in this State, and under the authorities cited all of them are entitled to the equal protection of the laws of this State. Every tax levied on the business of insurance, under the limitation fixed by the second division of section 1 of article 9 of our constitution, must be "by general law, uniform as to the class upon which it operates." An occupation tax on the business of insurance, to be valid, must operate alike upon all persons or corporations engaged in the same class of insurance business. Section 30, operating upon insurance companies incorporated by the authority of other States or governments and licensed to do business in this State, and not upon insurance companies incorporated under the laws of this State and other companies and persons doing identically the same class of insurance business, contravenes the Federal and State constitutions and is void.

Mr. CHIEF JUSTICE DUNCAN, also dissenting:

Section 30, aforesaid, is a valid enactment, as I view it, and does not contravene any provision of the State or Fed-

eral constitution when properly construed with subsequent acts of the Illinois legislature. At the time this statute was passed personal property was required by law to be listed and taxed at its cash value. Such property is now required by law to be listed at its cash value and is taxed at one-half its cash value. In my judgment the court has erred in its present and in some of its previous decisions in holding, in effect, that subsequent acts of the legislature requiring personal and other property to be listed at cash value and taxed at one-third or one-half the cash value thereof had no application to the taxing of net receipts of foreign insurance companies under section 30.

It will not aid us in the least in undertaking to define and classify the taxes that are collected under section 30. We know such taxes are not poll taxes, and it does not aid us if it is positively demonstrated that such taxes are excise taxes. What we really need to understand, it seems to me, is the object and purpose of the act and the necessity therefor, in order to tax such foreign insurance companies in substantially the same manner as our local and resident insurance companies of the same class are taxed. Our resident insurance companies of the class mentioned in said section had to pay an annual tax not only on all the personal and real property actually possessed and owned by them in this State, but they also had to pay the same character of tax on their net annual gains or accumulations from the business transacted by them every year. We may very properly call it a tax on their net annual gains or net profits. Such net gains or profits were taxed as money or other property, depending upon whether or not the local insurance companies had invested their net receipts in personal or real property or were held as cash or money. If they complied with the law it was not possible for resident insurance companies to escape such taxes unless they invested the net cash so received in property in some other State. The tax as to resident insurance companies was a tax on money or

property here in the State. The foreign insurance companies of the same class accumulated their net profits or net gains as cash, and they were avoiding practically all tax thereon in this State because of the provisions of our taxing laws that cash as well as other personal property was to be listed and taxed on the amount and value thereof held and owned on the first day of April or first day of May of each year. Their cash, or practically all of it, was sent out of the State before the day named in the statute for listing and valuing the same arrived, and the result was, such corporations were evading and escaping practically all taxation on the net profits or net gains they had accumulated from the business they transacted in the State, which the legislature deemed unfair and unjust to the local insurance companies of the same class as well as to the people of the State. Hence section 30 was passed, and every provision of it shows clearly that it was the intention of the legislature to tax both local and foreign insurance companies therein mentioned, upon substantially the same character of property, equally and uniformly and without discrimination.

This tax as to the local insurance company was a personal property or other property tax, because such net annual gains or profits had their situs here in the shape of money, or other property if the money had been invested. As to the foreign insurance company of that class, it was a tax on net receipts or net profits or net gains that might or might not have a situs here, because most of such had been sent out of the State in the form of cash or money. Nevertheless, both companies were taxed, and are taxed, equally and uniformly and without discrimination, or as nearly so as is possible to be done, on the same property or its representative,—the net annual gains or net accumulations or profits realized from the business annually transacted in the State.

The statute shows clearly and unequivocally that the objects and purposes and results of taxation of insurance companies, local and foreign, have been and will continue to be as above stated if the statute itself is followed and the subsequent acts of the legislature aforesaid applied, and which by necessary implication should be applied, by the taxing authorities. The act itself specifically provides that the amount of the net receipts of such agency for the preceding year shall be entered on the tax lists of the county, town and municipality, and subject to the same rate of taxation, for all purposes,—State, county, town and municipal,—that other personal property is subject to at the place where located. It cannot be subject to the same rate of taxation if such net receipts bear twice the amount of taxes as the local insurance companies' net gains bear. The very language of the act forbids that such net receipts be assessed at full value while property now is taken at only half value for taxation. The statute was valid and violated no provision of the constitution, State or Federal, when enacted, and is still the same valid act, intending to deal with equal and exact justice with both foreign and domestic insurance companies of the class aforesaid. It is only prevented from doing so by the interpretation now placed upon it by the court, which I believe was not only never intended but is expressly disavowed by the very language of the act. By necessary implication from subsequent acts and by the language of section 30 such net receipts of foreign insurance companies must be taxed at half value and "subject to the same rate of taxation * * * that other personal property is subject to at the place where located," as expressly provided in section 30.